Michael W. Young, USB 12282
Lauren Hunt, USB 14682
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
MYoung@parsonsbehle.com
LHunt@parsonsbehle.com

*Attorneys for Plaintiffs Jane Doe 1 and Jane Doe 2*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JANE DOE 1 and E.W. for in behalf of JANE DOE 2, a minor.<br><br>Plaintiffs,<br><br>vs.<br><br>OGDEN CITY SCHOOL DISTRICT,<br><br>Respondent. | **AMENDED COMPLAINT AND JURY DEMAND**<br><br>Case No.:   1:20-cv-00048-HCN-DAO<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

## SUMMARY OF CASE

In 2015-2016, Drew Tutt ("Tutt") was working within the Ogden City School District (the "District") as a schoolteacher at a Junior High School. Due to his position as a schoolteacher of children, he had access and exposure to underage female students on a daily basis. Tutt groomed multiple young students by adding them on social media, chatting with them late at night, putting some in positions as his "teacher's assistant" or assisting him in coaching sports teams, engaging with them privately during lunch hours, and meeting with some of them after hours but often on school grounds to engage in illegal sexual activities.

School officials within the District received multiple complaints from parents about Tutt's concerning contact with underage students. Despite this, the District failed to properly investigate Tutt and allowed him to have continued access to underage students, including Jane Doe 1. Tutt made Jane Doe 1 his teacher's assistant and his sports aid, continued to access her through social media, text messaging, and directly at school. Tutt ultimately ended up sexually assaulting Jane Doe 1. Additionally, Tutt began to groom Jane Doe 2 through the same methods of social media, late-night texting, and contact during school hours.

Tutt was caught engaging in illegal sexual activity with another underage female student, and criminal charges were filed. Jane Doe 1 was included as part of the criminal case. During the time of the case, Tutt was being represented by an individual whom the District also employed, and whom Jane Doe 1 had to see at school while the criminal case was ongoing, creating a hostile learning environment for her, and a heightened risk of further harm and harassment.

The District's negligent employment, retention, and supervision of abuser Tutt enabled Tutt to access, manipulate, and abuse multiple underage students. The District engaged in institutional betrayal of Jane Does 1 and 2 and violations of its obligations under Title IX by allowing Tutt to retain exclusively underage females as his teachers' aids, failing to properly investigate complaints, and for allowing Tutt's defense attorney to remain employed by the District throughout the criminal case, creating a hostile learning environment.

Accordingly, Plaintiffs Jane Does 1 and 2, by and through counsel, complain of Defendant Ogden School District and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1. The full names and identities of Plaintiffs are not disclosed in this Complaint to protect Plaintiffs' privacy as victims of sexual assault. Plaintiff's full identities will be made known to all parties subject to a confidentiality agreement.

2. Plaintiff Jane Doe 1 is a now adult female who was a former student within the District that employed Tutt. Plaintiff Jane Doe 2 is an underage female who attended the District and was exposed to Tutt during the relevant time period.

3. Defendant Ogden School District is located in Ogden City, Weber County, Utah. The District employed and was responsible to adequately train, supervise, and investigate claims against Tutt during the time of his employment with the District under its duties to students and its obligations under Title IX.

4. Plaintiffs originally filed this matter in the Second Judicial District Court of Utah, and Defendant removed the matter to federal court.

## GENERAL ALLEGATIONS

**Title IX requirements**

5. An institution may be liable for civil penalties if it has not upheld its legal obligations under Title IX.

6. An institution like Ogden City School District may be liable for violating Title IX where the institution (a) acts with deliberate indifference to known acts of harassment discrimination, and/or assault; (b) through official policy creates a heightened risk of harassment, discrimination, and/or sexual assault; (c) retaliates against an individual who reports or complains

or harassment, discrimination, and/or assault; (d) treats women and men disproportionately; and/or (e) enforces policies that result in unequal impact on men and women.

7. "Deliberate indifference to known acts of harassment . . . amounts to an intentional violation of Title IX, capable of supporting a private damages action." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999) (citing *Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274 (1998).

8. This includes harassment both by the school itself and by other students, as long as "the funding recipient has some control over the alleged harassment." *Id.* at 644.

9. The Tenth Circuit has interpreted Supreme Court precedent to create a four-factor test for liability for deliberate indifference. A plaintiff "must allege that the [institution] (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999) (citing *Davis*).

10. Deliberate indifference may be demonstrated by a school's "respond[ing] to known . . . harassment in a manner that is clearly unreasonable." *Davis,* 526 U.S. at 649.

11. Whether a response is "clearly unreasonable" is a question of fact and is intended to be flexible. *Id.*

12. Nevertheless, where a university "knowingly refuse[s] to take any action in response to the behavior, such as investigating or putting an end to the harassment, or refuse[s] to take action to bring the recipient institution into compliance," the school has demonstrated deliberate indifference giving rise to liability. *Papelino v. Albany College of Pharmacy of Union*

*Univ.*, 633 F.3d 81, 90 (2d Cir. 2011) (internal punctuation omitted) (quoting *Davis*, 526 U.S. at 651, 654; *Gebser*, 524 U.S. at 290).

13. A school "intentionally subject[s] students to harassment" when it "deliberately decide[s] not to take remedial action." *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007) (emphasis in original) (citing *Davis*, 524 U.S. at 290).

14. Severity can also be established by a single incident. "The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical. Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe."

15. The Department of Education has also provided guidance instructing schools to "consider whether their disciplinary policies have a chilling effect on victims' or other students' reporting of sexual violence offenses." U.S. Dep't of Educ. Office for Civil Rights, Dear Colleague Letter: Sexual Violence ("2011 Dear Colleague Letter"), at 15.

16. This may also occur where the school's "policy or custom of inadequately handling and even discouraging reports of peer sexual assault created a heightened risk of sexual assault, thereby inflicting the injury of which Plaintiffs complain." *Doe 1 v. Baylor Univ.*, 240 F.Supp.3d 646, 662 (W.D. Tex. 2017).

17. "Retaliation against a person because that person has complained of sex discrimination is [a] form of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).

18. A plaintiff establishes retaliation by showing "(1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4)

a causal connection between the protected activity and the adverse action." *Papelino*, 633 F.3d 81, 92 (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998)).

19. Filing a complaint of discriminatory activity or harassment is a protected activity. *See, e.g.*, *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 563-64 (3d Cir. 2017); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014); *Papelino*, 633 F.3d at 92.

20. Demonstrating a causal connection between the protected activity and the adverse action is a question of fact, which applies the McDonnell Douglas burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

21. First, the plaintiff must establish a prima facie case of discrimination. Once the plaintiff has established a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.*

22. If the defendant is able to do so, the burden shifts back to the plaintiff to show that the defendant's articulated reasons were pretextual. *Id.*

23. "The burden on a plaintiff to show a prima facie case of retaliation is low. Only 'a minimal threshold showing of retaliation is required.'" *Ollier*, 768 F.3d at 867 (quoting *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012)). Indeed, "Close temporal proximity between the plaintiff's protected activity and the . . . adverse action may in itself be sufficient to establish the requisite causal connection." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

24. The proof necessary for a prima facie case "does not even need to rise to the level of a preponderance of the evidence." *Emeldi*, 698 F.3d at 724 (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)).

## FACTUAL ALLEGATIONS

25.     Ogden City School District hired Drew Tutt to work as a teacher without taking steps to ensure that he was safe to work around underage females and students.

26.     After hiring Tutt, the District did not supervise Tutt while Tutt was allowed to teach and associate with students, including Plaintiffs.

27.     Tutt was in a position of special trust over his students, including Plaintiffs, as a teacher at the school during 2015-2016.

28.     The District allowed underage female students, including Plaintiff Jane Doe 1, to receive school credit for being Teacher's Assistants to Tutt, giving him additional access to these young vulnerable women.

29.     The District allowed Plaintiff Jane Doe 1 to be removed from her math class to obtain school credit as Tutt's Teacher's Assistant.

30.     During his employment as a teacher with the District, Tutt began to groom multiple young women, including Plaintiffs, during school hours while on school property. This included inviting them to one-on-one lunches with him in his classroom, adding them on Snapchat, adding them on Facebook, texting them explicit messages, calling them late at night, sending explicit pictures of himself via Snapchat, and requesting that they, including Plaintiff Jane Doe 1, send pictures of themselves via Snapchat.

31.     During his employment as a teacher with the District, Tutt was the school's soccer coach, and retained Plaintiff Jane Doe 1 as his "aid," giving him further access to her.

32. Plaintiffs' mother called the principal of the School to file a formal complaint against Tutt in September of 2016 for crossing inappropriate boundaries with her daughters when she found out that Tutt had been calling and texting Plaintiffs late at night.

33. Plaintiffs' mother was told that a formal complaint would be written. When Plaintiffs' mother called to follow up about what was done, the School would not give her any further information.

34. During his employment with the District and because of his access to and grooming of Plaintiff Jane Doe 1, Tutt began to pick Plaintiff Jane Doe 1 up at her house late at night to play "Pokemon Go."

35. During his employment with the District and because of his access to and grooming of Plaintiff, Tutt began to ask Plaintiff Jane Doe 1 to sneak out of her home late at night, where they would go to the school grounds or a nearby park. He then requested her to remove her top but cover her nipples so he could look at her body.

36. During his employment with the District and because of his access to and grooming of Plaintiff, Tutt picked up Plaintiff Jane Doe 1 from her home and "made out" with her in his car.

37. During his employment with the District, Tutt began texting, Snapchatting, and Facebooking Plaintiff Jane Doe 2. Tutt would contact her using these methods frequently and late at night, trying to discuss his poor relationship with his wife and wanting to get divorced, asking Plaintiff Jane Doe 2 to get milkshakes with him, and sending her pictures of him cutting himself.

38. When the principal of the school was interviewed in connection with the criminal investigation, he stated that he "was a little suspicious that something may have been going on with [Jane Doe 1 and Tutt], as she was always around [Tutt]," despite having also received multiple

complaints from parents about Tutt's behavior with their daughters. He further stated that he had contacted E.W. (Jane Does' parent) in response to her complaints about Tutt and told her that he had "taken care of the problem."

39. During his employment with the District and because of his access to and grooming of Plaintiff, Tutt picked up Plaintiff Jane Doe 1 from her home and they went to school grounds where he requested Plaintiff Jane Doe 1 give him hickeys on his neck.

40. During his employment with the District and because of his access to and grooming of Plaintiff, Tutt picked up Plaintiff Jane Doe 1 from her home and they went to school grounds where he kissed and gave hickeys to Plaintiff Jane Doe 1 on her bikini line and thighs underneath her clothing.

41. As a direct result of the District's negligent hiring, supervision, and retention of Tutt, Plaintiffs have suffered harm and damages, including but not limited to physical and emotional pain and suffering, mental anguish and emotional distress, and other special damages known and unknown to Plaintiffs at this time.

## FIRST CAUSE OF ACTION

### Deliberate Indifference Under Title IX

42. Plaintiffs incorporate and reallege the allegations of each of the preceding paragraphs as if fully set forth herein.

43. The District was deliberately indifferent when, despite having received complaints from parents, including the mother of Plaintiffs, that Tutt was inappropriately engaged with underage female students at school and via Snapchat and Facebook, with even the principal of the school admitting that he was suspicious of inappropriate contact between Tutt and Jane Doe 1

independent of the actual complaints he had received from parents, the District failed to act to ensure this harmful contact stopped. Tutt was able to continue this harmful conduct with Janes Doe 1 and 2.

44. Tutt continued to have access to underage female students, including Plaintiffs, in their capacity as his Teacher's Assistants, soccer aids, through Facebook, through Snapchat, through text message, and in school during school hours or lunches despite the complaints from parents.

45. The District, despite complaints from parents, did not ensure that Tutt unfriend underage female students on Facebook and Snapchat, not have access to these girls through the Teacher's Assistant option (for which these girls received school credit), or through their aiding him coaching sports teams.

46. Through his continued ability to access and groom these underage female students, including Plaintiff Jane Does, he was eventually able to sexually assault Jane Doe 1 multiple times, including instances that happened on school grounds and began grooming Jane Doe 2.

47. The District was deliberately indifferent when, knowing a criminal action was pending against Tutt and knowing that he was being legally represented by a fellow teacher at the school, it continued to expose Plaintiff Jane Doe 1 and 2 to a hostile environment by retaining this teacher while Jane Doe 1 had to go through an incredibly taxing criminal process with this teacher as her opposition.

48. As a result of the District's deliberate indifference, Plaintiffs suffered harm including emotional injury, pain and suffering, and past and future expenses for counseling and therapy, and other special damages known and unknown to Plaintiffs at this time.

## SECOND CAUSE OF ACTION

### Heightened Risk and Retaliation Under Title IX

49.     Plaintiffs incorporate and reallege the allegations of each of the preceding paragraphs as if fully set forth herein.

50.     Due to Tutt's ability to, through school policy, retain exclusively underage female students as his Teacher's Assistants and sports aids, even after having received complaints against Tutt, these girls suffered a heightened risk of his method of abuse which included extensive grooming.

51.     Due to the District's policy, or lack thereof, of investigations regarding complaints about inappropriate conduct of teachers, including teachers' communication with students via social media, these girls suffered a heightened risk of and continued exposure to Tutt's method of abuse.

52.     The District created a heightened risk of harassment and discrimination when, knowing a criminal action was pending against Tutt and knowing that he was being represented by a fellow teacher at the school, it continued to expose Plaintiff Jane Does to a hostile environment by retaining this teacher.

53.     As a result of the District's actions, Plaintiffs suffered harm including emotional injury, pain and suffering, and past and future expenses for counseling and therapy, and other special damages known and unknown to Plaintiffs at this time.

## THIRD CAUSE OF ACTION

### Retaliation Under Title IX

54. Once criminal charges had been filed against Tutt, the District engaged in retaliation against Jane Does by continuing to employ as a teacher a man who also was serving as Tutt's criminal defense attorney while the criminal case was ongoing.

55. Plaintiff Jane Does had to interact with and be exposed to this individual while going through the criminal justice process as a victim of sexual assault.

56. As a result of the District's retaliation and failure to address the emotional needs of a student and victim of sexual assault, Plaintiff Jane Doe 1 suffered additional harm including emotional injury and pain and suffering.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendant as follows:

1. For judgment in Plaintiffs' favor and against the District for deliberate indifference under Title IX, heightened risk under Title IX, and retaliation under Title IX;

2. For an award of compensatory damages, including economic and non-economic damages, in favor of Plaintiffs and against Defendant, including damages resulting from emotional distress, in an amount in excess of $300,000 to be determined at trial;

3. For an award of reasonable attorneys' fees and costs associated with this action;

4. For an award of post-judgment interest as allowed by law;

5. For such other and further relief as the Court may deem just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action.

DATED this 2nd day of June, 2020.

                                      PARSONS BEHLE & LATIMER

                                      */s/ Michael W. Young*

                                      Michael W. Young
                                      Lauren Hunt
                                      *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June, 2020, a true and correct copy of the foregoing was served via email to the following:

>KYLE J. KAISER (13924)
>Assistant Utah Attorney General
>SEAN D. REYES (7969)
>Utah Attorney General
>160 East 300 South, Sixth Floor
>P.O. Box 140856
>Salt Lake City, Utah 84114-0856
>Telephone: (801) 366-0100
>E-mail: kkaiser@agutah.gov

/s/ Michael W. Young

4813-9781-5230.v3