Michael W. Young, USB 12282
Lauren Hunt, USB 14682
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
MYoung@parsonsbehle.com
LHunt@parsonsbehle.com

*Attorneys for Plaintiff Jane Doe 1*

## IN THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JANE DOE 1<br><br>     Plaintiff,<br><br>vs.<br><br>OGDEN CITY SCHOOL DISTRICT,<br><br>    Defendant. | **PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**<br><br>Case No. 1:20-cv-00048-HCN-DAO<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF RELIEF REQUESTED AND GROUNDS THEREFOR ............................... 1

RELEVANT FACTS ...................................................................................................... 2

ARGUMENT ............................................................................................................... 7

I.      PLAINTIFF'S THIRD AMENDED COMPLAINT SATISFIES RULE 15 OF
        THE FEDERAL RULES OF CIVIL PROCEDURE ........................................................ 7

        A.      The Amendment is timely. ....................................................................... 8

        B.      There is no harm of undue prejudice to Defendant ................................. 8

        C.      The Amendment is justified. ................................................................... 9

        D.      Amendment is consistent with the purposes of Rule 15. ..................... 16

II.     GOOD CAUSE EXISTS UNDER RULE 16 FOR PLAINTIFF'S THIRD
        AMENDED COMPLAINT. ................................................................................. 17

CONCLUSION ........................................................................................................... 18

## INTRODUCTION

Plaintiff respectfully requests leave to file her proposed Third Amended Complaint (attached hereto as Exhibit 1). Plaintiff recently discovered new facts and admissions during depositions last month that give rise to substantive claims under 42 U.S.C. § 1983. Specifically, Plaintiff recently discovered that Ogden School District was aware of and did nothing in response to three separate instances of sexual grooming and abuse occurring in Ogden School District prior to her own victimization.

Plaintiff realizes that this matter has been ongoing and that unavoidable delays due to Covid-19 have significantly prolonged the timeline. More critically, however, because Defendant has continuously failed to provide full responsive answers and documents to Plaintiff's discovery requests, the factual basis for her new proposed claims were not determined or supported until a central deposition taken just last month. Ms. Bennington, H.R. Director for the District, admitted in her deposition that in the wake of three teachers within the District sexually grooming and/or assaulting their students prior to Plaintiff's similar abuse, the District took *no* steps to update its policies, procedures, or training regarding appropriate boundaries and grooming. This failure exposes the District to, and gives Plaintiff substantive rights under, 42 U.S.C. § 1983.

Because Plaintiff's request meets the requirements of both Fed R. Civ. P. 15 and 16, she respectfully asks this Court leave to file her proposed Third Amended Complaint.

## STATEMENT OF RELIEF REQUESTED AND GROUNDS THEREFOR

Plaintiff requests leave from this Court to amend her Complaint to add three causes of action under 42 U.S.C. § 1983 for Municipal Policy or Custom, Municipal Failure to Train or Supervise, and State-Created Danger. Plaintiff's proposed Amendment is timely, does not

1

prejudice Defendant, and is justified. Further, Good cause for this amendment exists because the information that forms the basis for Plaintiff's § 1983 claims was just recently discovered at a July 26, 2022 deposition.

## <u>RELEVANT FACTS</u>

1.      Plaintiff filed her original complaint in the Second District Court for Weber County, State of Utah on April 13, 2020. *See* Complaint, *Jane Does 1 and 2 v. Ogden City School District*, Case No. 200902241 (2d Dist. Utah Apr. 13, 2020).

2.      The case was ultimately removed to this court and Plaintiff filed the Second Amended Complaint on March 10, 2021. (ECF No. 35.)

3.      The original scheduling order in this case required the parties to amend their pleadings by June 1, 2021. (*See* Scheduling Order, ECF No. 42.)

4.      The original scheduling order also provided that fact discovery would close on November 30, 2021. (*Id.*)

5.      The parties stipulated to amend the scheduling order four additional times, with the most recent Order providing for a fact discovery deadline of October 11, 2022. (*See* Fourth Amended Scheduling Order, ECF No. 59.)

6.      Discovery regarding the District's relevant policies and procedures has been particularly protracted in this matter. Plaintiff first requested the District's Policies and Procedures in her First Set of Discovery Requests served on the District on June 14, 2021. (*See* Plaintiff's First Set of Discovery Requests, June 14, 2021, attached as Exhibit 2) This request not only asked for the relevant Policies and Procedures, but specifically asked for any "past iterations of said Policies and Procedures." *Id.* The District first responded to this request by directing Plaintiff to a

previously produced version of the Policies and Procedures in its Initial Disclosures and further indicated that "[a]dditional policies will be produced at a time mutually convenient to the parties." (*See* Defendant's Response to Plaintiff's First Set of Discovery Requests, July 12, 2021, attached as Exhibit 3.)

7.      Ultimately, the District did not complete its production of documents responsive to Plaintiff's First Set of Discovery Requests until February 4, 2022 (*See* Letters from Kyle J. Kaiser dated July 26, 2021, August 2, 2021, December 21, 2021, and February 4, 2022, attached as Exhibit 4.)

8.      Critically, the District's responses to Plaintiff's First Set of Discovery Requests and attendant production of documents did not provide a complete picture as to what policies and procedures were in effect at what time. In an effort to establish clarity on the issue, Plaintiff served the Defendant with her Third Set of Discovery Requests:

> **Interrogatory No. 11**: Identify and describe in detail any remedial steps taken or policies enacted in the District after three District teachers (Liza Roberts in 2012, an unidentified teacher allowed to resign in 2014, and James Davenport in 2015) were reported and/or criminally charged for the sexual grooming and/or assault upon students. For each policy, procedure, or practice identified, provide the date the policy, procedure, or practice was implemented and, if applicable, the date it was terminated. If any policy, procedure, or practice varies on a case-by-case basis, please explain what factors influence the application of that policy, procedure, or practice.

(See Plaintiffs Third Set of Discovery Requests, April 6, 2022, attached as Exhibit 5.) In response to this interrogatory, Defendant again failed to provide a complete response and, instead, indicated that it did not have any records from before 2018 but that it did not believe there were any policy changes following the Davenport incident in 2015. The District did not address what, if any, policy

3

changes were made after the 2012 incident. (Defendant's Response to Plaintiff's Third Set of Discovery Requests, June 6, 2022, attached as Exhibit 6.)

9.      The District's responses to Plaintiff's First Set of Discovery Requests and attendant production of documents also did not provide a complete picture of the training implemented by the District before and after Plaintiff's assault. Specifically, Plaintiff served an interrogatory which read:

> **Interrogatory No. 2**: Describe with reasonable particularity the process for vetting, hiring, and training Your teachers, including but not limited to background checks, employee handbooks, security training, sexual harassment training, and protocol for incident reporting.

(*See* Exhibit 2). Defendants' response indicated that prior to 2018, incoming teachers would meet with the HR office "to walk through the policies of the Ogden School District Board of Education and the Utah State Board of Education, which were given to teachers in hard-copy form." (*See* Defendant's Response to Plaintiff's First Set of Discovery Requests, July 12, 2021, Exhibit 3). The Response also indicated that additional training and policy review occurred at in-person faculty meetings held at the beginning of each school year. *Id.* Finally, Defendants clarified that "[t]eachers receive further training from their school's principal on school-specific issues. Principals can create employee handbooks for their school, which can include policies of the Ogden School District Board of Education, procedural trainings, and other items at the discretion of the principal." *Id.*

Defendant later provided training materials from Jessica Bennington, the District's Human Resources Director and Bryan Becherini, the former principal of Mound Fort Junior High School (the school at which Tutt worked). (*See* Letter from Kyle Kaiser dated August 2, 2021, included

in Exhibit 4). Ms. Bennington's training included a video about appropriate boundaries between students and teachers but did not specify when this training was created. Mr. Becherini's materials appear to be from the 2019 school year.

10.    Plaintiff deposed Ogden School District's Human Resources Director, Jessica Bennington, on July 26, 2022. (See generally Deposition of Jessica Bennington ("Bennington Dep."), relevant excerpts of which are attached hereto as Exhibit 7.)

11.    In her deposition, Ms. Bennington was unable to pinpoint which version of the District's Title IX Discrimination and Harassment policies was in place during Tutt's employment. (*Id.* at pp.135–139.) Indeed, this remains a point of issue and the Bennington deposition was continued so that the District could try and establish a final position as to what Policies and Procedures were in place at the time of the underlying incident—all of this after Plaintiff has sought this information for more than a year.

12.    Ms. Bennington did, however, confirmed in her deposition that no substantive policy changes occurred in the district in response to three known instances of adult sexual misconduct with students. (*Id.* at 222:12-223:13.)

13.    Ms. Bennington also explained that employee and educator training is mandated by the state of Utah and rarely includes programming created by individual districts. (*Id.* at 68:6-12.) Ms. Bennington also confirmed that the District generally relies on the State's ethics training without offering more to unlicensed educators (like Tutt) in the District. (*Id.* at 48:17-18; 71:22-25.) According to Ms. Bennington, any training given to teachers happens at the beginning of the school year, and the content of that training remains largely the same year over year. (*Id.* at 100:17-

5

101:5.) The District's response to Interrogatory number 2 (discussed above at ¶ 9) failed to clarify the role the District takes in creating its training materials.

14.    Ms. Bennington also confirmed in her deposition that the training video provided by the District and referenced above at ¶ 9 was created in 2018. (Bennington Dep. at 193:4-5.) Ms. Bennington indicated the content of that training was developed by the State's risk management department. (*Id.* at 193:13-18.) This training is now part of what the District requires its employees to review annually. (*Id.* at 193:8-12.)

15.    Ms. Bennington conceded that although the District and the State of Utah had policies in place requiring the District to investigate and report *all* boundary violations like those undertaken by Tutt, the District did not report Tutt after first learning of his inappropriate late-night text messages and Snapchats with Plaintiff because the District did not have "reasonable suspicion for an inappropriate relationship." (*Id.* at 161:21-24; 165:25-166:8.)

16.    After receiving the District's response to Interrogatory No. 2 (discussed above at ¶ 9), Plaintiff also deposed a former principal at Mound Fort Junior High, Charlotte Della Parry, on July 27, 2022. During Ms. Parry's deposition, she revealed that the District did not train its teachers or employees on appropriate uses of cell phones and social media between employees and students in the time period before a Mound Fort teacher sexually groomed and assaulted a young man in 2012. *See* Deposition of Charlotte Della Parry ("Parry Dep."), true and correct excerpts from which are attached hereto as Exhibit 8, at 25:14-26:2.

17.    Plaintiff still waiting to take or conclude the depositions of at least six individuals, including Ms. Bennington and the 30(b)(6).

<u>**ARGUMENT**</u>

As Plaintiff's request falls outside the deadline to amend pleadings in the scheduling order, she must demonstrate both that the requirements for amendment under Rule 15 are satisfied and that good cause for the amendment exists under Rule 16. *Adler v. All Hours Plumbing Drain Cleaning 24-7-365*, No. 2:21-CV-00141, 2022 WL 2077953, at *2 (D. Utah June 9, 2022). Where Plaintiff's request to amend is not the result of undue delay, will not significantly prejudice Defendant, and is justified, Plaintiff's requested relief satisfies Rule 15's liberal requirements. Further, where Plaintiff can demonstrate that the facts underlying the new causes of action in her Proposed Third Amended Complaint were only recently discovered during a deposition, Plaintiff can demonstrate good cause for the Amendment under Rule 16. Accordingly, this Court should grant Plaintiff's requested leave to file the proposed Third Amended Complaint.

**I.    PLAINTIFF'S THIRD AMENDED COMPLAINT SATISFIES RULE 15 OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

Under Rule 15 of the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The grant of leave to amend the pleadings pursuant to Fed. R. Civ. P. 15(a) is within the discretion of the trial court." *Castleglen, Inc. v. Resolution Tr. Corp.*, 984 F.2d 1571, 1584 (10th Cir. 1993). "The purpose of [Rule 15(a) is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (citation omitted). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Sinclair Wyoming Ref.*

*Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 777 (10th Cir. 2021) (quoting *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009)).

### A.      The Amendment is timely.

"Motions to amend are typically deemed untimely when they are filed in the advanced procedural stages of the litigation process, such as after the completion of discovery, on the eve of a scheduled trial date, after an order of dismissal has already been entered, or where the motion is filed 'several years into the litigation.'" *Evans v. B&E Pace Inv. LLC,* 2018 UT App 37 at ¶17. While the original Complaint was filed in 2020, delays outside the parties' control due to Covid-19 have prolonged the timeline in this matter. More critically, Defendant's failure to fully respond to Plaintiff's discovery requests regarding the District's policies and procedures directly impacted Plaintiff's ability to ascertain facts relevant to the Amendment. Plaintiff only recently discovered the basis for her three requested additional causes of action during depositions taken last month and is still waiting on clarification from the District about what policies were in place at what time. Finally, Plaintiff has only deposed a fraction of the individuals it plans to depose in this matter, and fact discovery is not currently set to end until October 11. (ECF No.  59). Expert discovery has not yet begun, and no trial is set. This Court should therefore conclude that the timeliness factor weighs in favor of granting leave to amend.

### B.      There is no harm of undue prejudice to Defendant.

A showing of "simple prejudice" is not enough to warrant denial of a Rule 15 Motion. *Evans, supra,* at ¶18.  "Instead, for this factor to support denial of the motion, the nonmoving party must suffer 'undue or substantial prejudice' that is 'unavoidable.'" *Id.*  "The key to this part of the inquiry is whether the opposing side has "no time to prepare" for the amended pleading. *Id.*  If

prejudice can be avoided "with a reasonable, brief, and targeted extension of the fact discovery cutoff date," the motion for leave should be granted. *Id.*

Plaintiff's proposed additional causes of action all stem from policies enacted or actions taken by the District in the wake of three teachers prior to Tutt who had been caught sexually grooming and/or assaulting their students within the District. The history of the District's policies and procedures surrounding boundaries between teachers and students have been the topic of discovery since Plaintiff's first requests. Plaintiff's proposed Amendment does not expand the scope of existing discovery, particularly for Defendant. Defendant would not have to take any additional depositions beyond those already scheduled to prepare for the Amendment. The Amendment will not delay the current scheduling order beyond the time necessary for the District to file its Answer. Finally, Plaintiff only recently discovered the facts substantiating her new claims because Defendant failed to fully respond to discovery requests; to deny her the ability to amend under a finding of substantial prejudice to Defendant would be more than somewhat ironic.

### C.   <u>The Amendment is justified.</u>

The factor of justification deals with why the moving party did not move earlier to amend its pleading.  Where "the party knew of the events or claims earlier yet failed to plead them due to a dilatory motive, a bad faith effort during the pleading process, or unreasonable neglect in terms of pleading preparation," the amendment may not be justified. *Evans, supra,* at ¶19.

The general basis for applying § 1983 liability to Defendants was recently revealed in depositions taken last month. Accordingly, no dilatory motive exists to deny Plaintiff's Motion. *See Combs v. PriceWaterhouse Coopers LLP*, 382 F.3d 1196, 1206 (10th Cir. 2004); *Brush v.*

*Rinne*, 69 F.3d 547 (10th Cir. 1995) (suggesting that discovery of new evidence unavailable at the time of the original filing could serve as a basis for amending a complaint).

> **1.    The Facts of the District's Liability Under § 1983 Were Uncovered During Recent Depositions.**

Plaintiff intends to add causes of action to her complaint against the District under two theories created in *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed. 2d 611 (1978): 1) "an informal custom[,]" that, while not expressly authorized, "is so permanent and well settled" it "constitute[s] a custom or usage with the force of law;" and 2) a "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010); *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). Plaintiff also intends to bring an alternative claim under the "state-created danger" test under § 1983, under which state officials can be liable for the acts of third parties where those officials 'created the danger' that caused the harm." *Marino v. Mayger*, 118 Fed. App'x. 393, 401 (10th Cir. 2004).

> **a.    Monell Liability**

In *Monell*, the Supreme Court held that municipalities can be liable under § 1983 for damages when the municipality inflicts constitutional injury through a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. 658, at 694. Such a policy or custom may include what is, in effect, a "policy of inaction" in the face of knowledge that municipal actors are routinely violating a specific constitutional right, thus becoming "the functional equivalent of a decision by the [municipality] itself to violate the Constitution." *Connick v. Thompson*, 563 U.S. 51, 61-62, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) (internal quotation marks omitted); *see also Monell*, 436 U.S. at 690-91

(discussing § 1983's application to "customs and usages," not just formally adopted policies and practices).  As explained in detail below, Plaintiff was unaware of several facts relevant to these causes of action until the depositions of Ms. Bennington and Ms. Parry. Upon discovering the relevant information, Plaintiff recognized the need to amend her Complaint, and requests that this Court allow her to do so.

Under the "municipal policy or custom" theory, Plaintiff will show that the District's failure to respond to several documented instances of teachers sexual grooming and/or assaulting students by neglecting to implement or update relevant policies and procedures demonstrated to perpetrators that such behavior was tolerated or condoned, and that the District's actions (or inactions) caused Plaintiff harm. To prove the municipal policy or custom theory, plaintiffs generally rely on instances where the district failed to investigate, reprimand, or otherwise appropriately respond to violations. *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009). Plaintiffs also generally rely on conduct such as failing to discipline or failing to safeguard against a known danger to establish an unwritten policy or custom for purposes of § 1983. *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1037 (10th Cir. 1993).

The District has a documented history of boundary violations on the part of employed schoolteachers resulting in sexual grooming and sexual abuse of students. *See* Proposed Third Amended Complaint at ¶¶ 76-79. The grooming and assaults in the District dating back to 2012 have been general public knowledge since they occurred.[1] Prior to Ms. Bennington's deposition,

---

[1] *See, e.g.*, Pat Reavy, *Ogden junior high teacher charged with 'sexting' teen student*, DESERETNEWS.COM (Nov. 7, 2012), https://www.deseret.com/2012/11/7/20509377/ogden-junior-high-teacher-charged-with-sexting-teen-student; Cimaron Neugebauer, *Ogden teacher resigns after sending 'inappropriate' messages to student*, Standard-Examiner (Apr. 15, 2014), https://www.standard.net/news/local/2014/apr/15/ogden-teacher-resigns-after-sending-inappropriate-messages-to-student/.

however, the only information in Plaintiff's possession regarding remedial measures following the prior incidents were delayed, vague, and incomplete responses found in Defendant's discovery responses. SOF ¶¶ 6-8.

Plaintiff directly asked for clarification on what policy changes were made and when. SOF ¶ 8. Even then, Defendant failed to fully comply with the discovery request in providing Defendant's Amended Response to Plaintiff's Third Set of Discovery Requests at Interrogatory No. 11 on June 6, 2022. *Id.* Specifically, that interrogatory sought clarification as to what, if anything, Defendant did in light of the previously documented incidents of sexual grooming and abuse within the District. *Id.* The District did not provide a complete answer to the interrogatory. *Id.* Instead, the District conceded that it was not aware of any changes following one of the three incidents (that took place in 2015), and then outlined training that now occurs following Plaintiff's incident. *Id.* The District did not address what, if any, policy changes were made after the earliest incident in 2012. It was not until Plaintiff deposed Ms. Bennington that she became aware that the District took *no action* to modify, update, or change its policies or training materials following those incidents, thus creating an environment that tolerated and condoned such behavior and failed to safeguard students like Plaintiff from such behavior. SOF ¶ 12.

Specifically, during Ms. Bennington's deposition, she revealed that the District's relevant policies were not revised after Liza Roberts purchased a cell phone for a student and began sending him nude photos and sexually explicit messages in 2012. SOF ¶ 12; *see also* DesertNews.com article referenced *supra* at note 1. Likewise, Ms. Bennington confirmed that no District policies were updated after an anonymous teacher resigned because it was discovered that he sent inappropriate messages to a student, nor were any policies updated after Justin Davenport was

charged with the rape, forcible sodomy, and forceable sex abuse of a student who had been his

teacher's assistant and with whom he frequently ate lunch alone. SOF ¶ 12.

Plaintiff also learned that employee and educator training is mandated by the state of Utah

and rarely includes programming created by individual districts. SOF ¶ 13. Further, Ms.

Bennington confirmed that the District generally relies on the State's ethics training, without

offering more to unlicensed educators (like Tutt) in the District. *Id*. According to Ms. Bennington,

any training given to teachers happens at the beginning of the school year, and the content of that

training remains largely the same year over year. *Id*. Finally, the training that now appears to be in

place related to boundary violations was 1) not implemented until 2018, and 2) created by the State

of Utah, not the District. SOF ¶ 14. Given the number of documented incidents in the District,

which all resulted from similar sexual grooming behavior, the failure of the District to both follow

current state policy and implement additional training and supervision of employees after three

documented incidents of boundary violations and sexual assault, exposes it to additional liability

under § 1983 that was not previously known to Plaintiff.

Plaintiff also learned during the Parry deposition that Mound Fort Junior High did not train

employees or students on appropriate social media contact prior to the 2012 incident.  SOF ¶ 16

Defendants' Response to Plaintiff's Interrogatory No. 2, as described at SOF ¶ 9, indicated that

prior to 2018, incoming teachers would meet with the HR office "to walk through the policies of

the Ogden School District Board of Education and the Utah State Board of Education, which were

given to teachers in hard-copy form." SOF ¶ 9. The Response also indicated that additional training

and policy review occurred at in-person faculty meetings held at the beginning of each school year.

*Id.* Further, the Response indicated that "Teachers receive further training from their school's

principal on school-specific issues. Principals can create employee handbooks for their school, which can include policies of the Ogden School District Board of Education, procedural trainings, and other items at the discretion of the principal." *Id.* Of course what the individual schools *could* do versus what was done at Plaintiff's school are two different things. The District only provided the content of such Principal-created trainings from Principal Becherini, thus requiring Plaintiff to depose additional District Principals to determine whether additional relevant trainings occurred. *Id.* Plaintiff has only deposed one of these Principals so far, with more depositions pending.

Under her proposed causes of action under § 1983 *Monell* liability, Plaintiff must demonstrate that the District's failure to take action created an environment that appeared to abusers like Tutt to condone or tolerate boundary-crossing behavior, and that the District's failure to update its policies or training caused her harm. Despite the numerous instances of obvious boundary violations that ultimately led to sexual assault, the District took *no steps* to modify its relevant policies to address the District's issues and safeguard its students, a fact that was unclear to Plaintiff until Ms. Bennington's deposition. *Id.*  Publicly available news articles and half-answers to discovery requests were simply insufficient to bring a cause of action under the relevant pleading requirements until Ms. Bennington's and Ms. Parry's admissions. *See Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (a complaint must provide sufficient supporting facts—not just potential legal theories—in order to be facially plausible).  As soon as Plaintiff was aware of the necessary facts to support her new causes of action, she raised as much with opposing counsel.

### b.    State-Created Danger

As an alternative to the *Monell* claims, which require a showing that the abuser was a state actor, Plaintiff also desires to add a cause of action for State-Created Danger under § 1983 to her

Complaint. To state a claim under this theory, Plaintiff must demonstrate (1) [d]efendants "created the danger or increased [the plaintiff's] vulnerability to the danger in some way;" (2) [the [plaintiff] "was a member of a limited and specifically definable group; (3) defendants' conduct put [the plaintiff] at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking." *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003). A municipality can increase a plaintiff's vulnerability to the danger by "knowingly maintaining a custom or practice. . .[of neglecting requirements of] municipal policy and/or state statute. *Rall v. Hobbs Mun. Sch. Dist.*, No. CIV 15-0518 RB/CG, 2016 U.S. Dist. LEXIS 189223, at *39 (D.N.M. Mar. 16, 2016) (finding that a school district's practice of violating a state policy was "conscious-shocking").

Plaintiff also discovered during Ms. Bennington's deposition the extent of the District's failure to abide by its own municipal and state policies for addressing concerns and reports of boundary violations by teachers. Ms. Bennington revealed in her deposition that although the District and the State of Utah had policies in place requiring them to investigate and report *all* boundary violations, the District decided not to report Tutt after first learning of his inappropriate late-night text messages and Snapchats with Plaintiff because the District did not have "reasonable suspicion for an inappropriate relationship." SOF ¶ 15. Plaintiff's discovery of the District's unwillingness to update its policies or training following three documented incidents of sexual grooming and boundary violations—coupled with its failure to investigate Mr. Tutt's documented boundary violation, based on a decision that was both contrary to District policy and state law and

15

made despite knowledge of the three prior incidents—makes the District's actions even more "conscience shocking" than originally contemplated.

Plaintiff could not have moved to amend any earlier before solidifying the facts determined at the depositions of Ms. Bennington and Ms. Parry. In fact, Plaintiff did not even wait until the conclusion of Ms. Bennington's deposition, which had to be extended in part because the District must clarify its timeline of policies, to move to amend. Plaintiff seeks this Amendment at the earliest possible time she could under good faith.

### D.   Amendment is consistent with the purposes of Rule 15.

Further, Rule 15 expressly allows parties to amend pleadings to conform to the evidence during and after trial, when doing so will aid in presenting the merits of a case. Fed. R. Civ. P. 15(b). It would make little sense to require Plaintiff to wait until trial to move to amend her Complaint to conform to evidence that Defendant has provided without objection and that will be presented at trial. *See* Ex 6 at p. 13 (indicating the District had no objections to discovery concerning remedial steps taken after the three prior incidents); *see also* Exhibit 7, Bennington Dep. at pp. 221-223 (discussing the relevant evidence of remedial measures without objection from Defendant's counsel).

To deny Plaintiff the ability to amend her Complaint to add claims about which she just learned, and to require her instead to file a new lawsuit and then move to consolidate the cases based on mere technicalities in a scheduling order, would be manifestly unjust and would fly in the face of judicial efficiency. *See Travelers Indem. Co. v. U.S., for Use of Constr. Specialties Co.*, 382 F.2d 103, 106 (10th Cir. 1967) ("The ends of justice are not served when forfeiture of just

4895-5949-2654.v2

claims because of technical rules is allowed").[2] Indeed, a guiding principle of the Federal Rules of Civil Procedure is to ensure efficiency by providing mechanisms whereby related facts and theories are tried in the same suit. *See, e.g.*, Fed. R. Civ. P. 13; 14; 15; 16, 18, 19; 20; 24; 42; *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged.") The rules contemplate and expect amendments of newly discovered causes of action to a case when appropriate, and the District's decision to deny Plaintiff's request to amend based on technicalities is inconsistent with the policy behind the Federal Rules.

Because Plaintiff's request is timely, does not prejudice Defendant, and is justified, Plaintiff's proposed Amendment meets the requirements of Rule 15.

## II.    GOOD CAUSE EXISTS UNDER RULE 16 FOR PLAINTIFF'S THIRD AMENDED COMPLAINT.

Pursuant Rule 16(b)(4) of the Federal Rules of Civil Procedure, "the court may extend the deadlines in a scheduling order if the movant is able to demonstrate 'good cause' for that

---

[2] It is unclear why opposing counsel has refused to stipulate for leave to simply amend the underlying complaint to include claims arising from the same transaction and occurrence as contemplated by Rule 18 of the Federal Rules of Civil Procedure. One might cynically ask if the intent is to force Plaintiff to file a separate action, then move to consolidate under Rule 42 of the Federal Rules of Civil Procedure in an effort to further delay Plaintiff from receiving her day in court; or worse, to later seek to dismiss such claims under claim preclusion arguing they should have been brought in this case. Procedural gamesmanship has no place in the adjudication of Plaintiff's substantive rights, particularly when the District has failed to fully respond to the discovery requests that would have provided Plaintiff the relevant information more than a year ago.

17

modification." F.R.C.P. 16(b)(4). A showing of good cause "requires the movant to establish that the scheduling deadlines could not be met despite the movant's diligent efforts." *Adler*, 2022 WL 2077953, at *2 (internal quotations omitted); *see also Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014) ("parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so"). "Examples of good cause include when the moving party learns new information through discovery or where the underlying law has changed." *Adler*, 2022 WL 2077953 at *2 (internal quotations omitted).

Here, as argued, Plaintiff discovered alarming facts concerning the District's policy or custom of failing to address and investigate boundary violations of teachers that were proven to lead to sexual abuse, which existed as early as 2012 when Liza Roberts sexually assaulted a student at Mound Fort Junior High School within the District. These discoveries manifest additional liability for Defendant under § 1983. Plaintiff was previously unaware of the extent of the District's inaction, and is still awaiting depositions that will provide further information about the District's policies. Accordingly, good cause for granting Plaintiff's Motion for Leave to File Plaintiff's First Amended Complaint exists.

## **CONCLUSION**

Based on the foregoing, this Court should grant Plaintiff leave to amend her Complaint to add additional causes of action under 42 U.S.C. § 1983.

4895-5949-2654.v2

DATED this 25th day of August, 2022.

PARSONS BEHLE & LATIMER

/s/ Michael W. Young

Michael W. Young
Lauren Hunt
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 25th, 2022, I caused a true and correct copy of the foregoing to be filed using the Court's electronic filing system, which effectuated service of such filing upon all counsel of record:

KYLE J. KAISER (13924)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
E-mail: kkaiser@agutah.gov

/s/ Michael W. Young

19