KYLE J. KAISER (13924)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
E-mail: kkaiser@agutah.gov

*Counsel for Defendant Ogden City School District*

UNITED STATES DISTRICT COURT DISTRICT OF
UTAH, NORTHERN DIVISION

| | |
|---|---|
| JANE DOE I,<br><br>  Plaintiff,<br><br>vs.<br><br>OGDEN CITY SCHOOL DISTRICT,<br><br>  Defendant, | **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**<br><br>Case No. 1:20-cv-00048-HCN-DAO<br><br>Judge Howard C. Nielson, Jr.<br>Magistrate Judge Daphne A. Oberg |

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

2:16-CV-00106-JNP-EJF,
  2018 WL 3215663 (D. Utah Feb. 5, 2018) .................................................. 10, 15, 17
*Alpenglow Botanicals, LLC v. United States*,
  894 F.3d 1187 (10th Cir. 2018) .......................................................................... 6
*Birch v. Polaris Indus., Inc.*,
  812 F.3d 1238 (10th Cir. 2015) ........................................................................ 12
*Colo. Visionary Acad. v. Medtronic, Inc.*,
  194 F.R.D. 684 (D. Colo. 2000) ......................................................................... 7
*Cummings v. Premier Rehab Keller, P.L.L.C.*,
  142 S. Ct. 1562 (2022) ...................................................................................... 14
*Estrada v. Martin Marietta Materials, Inc.*,
  No. No. 1:20-cv-00375-REB-SKC, 2020 WL 9424368 .................................. 14
*Foman v. Davis*,
  371 U.S. 178 (1962) ........................................................................................... 6
*Frank v. U.S. West, Inc.*,
  3 F.3d 1357 (10th Cir. 1993) .............................................................................. 7
*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998) ......................................................................................... 16
*Gorsuch, Ltd v. Wells Fargo Nat'l Bank Ass'n*,
  771 F.3d 1230 (10th Cir. 2014) ............................................................. 5, 6, 7, 14
*Husky Ventures, Inc. v. B55 Investments, Ltd.*,
  911 F.3d 1000 (10th Cir. 2018) ..................................................................... 7, 13
*Minter v. Prime Equipment Co*,
  . 451 F.3d 1196 (10th Cir. 2006) ......................................................... 13, 15, 16
*Vazirabadi v. Denver Pub. Sch.*,
  820 F. App'x 805 (10th Cir. July 23, 2020) ...................................................... 9

State Cases

*Evans v. B&E Pace, Inv. LLC*,
  2018 UT App 37 .............................................................................................. 15

State Statutes

Utah Code §§ 53E-6-604 .................................................................................... 10

Federal Rules

Fed. R. Civ. P. 15(a)(2) ......................................................................................... 6
Fed. R. Civ. P. 16(b)(4) ......................................................................................... 7
Fed. R. Civ. P. 16(b)(4) and (2) ............................................................................ 5

Federal Rule of Civil Procedure 15 ....................................................................................... 6, 7
Rule 16 .................................................................................................................................. 6, 7, 9

State Regulations

Utah Admin. Code R277-516-8 (2016) ...................................................................................... 10

Other Authorities

DUCivR 7-1(a)(5)(A) .................................................................................................................. 19

# INTRODUCTION

Defendant Ogden City School District opposes Plaintiff Jane Doe 1's Motion for Leave to File Third Amended Complaint (doc. 68).

In this case, Plaintiff alleges that the District was deliberately indifferent to a serious risk of sexual harassment, actionable under the private right of action implied in Title IX of the Education Amendments 1972, when it did not prevent her abuse at the hands of Drew Tutt, one of the District's teachers. The events occurred from 2015-2017. The parties have been litigating those claims (and others that have been dismissed) since 2020. Now, Doe seeks to add new civil rights claims to the case, spanning allegations that go back as early as 2012 and will require the District to defend broad allegations based on policies and practices, some of which were a decade old.

Plaintiff seeks to do this in case that has already had three active complaints and is already more than two years old, at a time when discovery is coming to a close, and to include facts and legal claims that were available at the outset of the case.

Plaintiff should not be allowed seriatim pleadings, modifying the claims repeatedly to fit a current litigation strategy.

Plaintiff's counsel's attempts to put the blame on Defendants for not providing complete answers to discovery, but those arguments are neither

factually nor legally relevant to the "good cause" standard Plaintiff must meet to modify the scheduling order to allow a late-amendment to her complaint. The Court has already expressed concerns in this case about the case's age; a late amendment here will only exacerbate those concerns.

Because Plaintiff cannot show "good cause" to amend the scheduling order to allow a third amendment to her complaint, the Court should deny the motion.

## **LEGAL STANDARD**

Plaintiff seeks to amend her complaint. However, the original scheduling order set a deadline of June 1, 2021 to add parties or amend pleadings, none of the amended scheduling orders modified that deadline, and the Court's amended scheduling orders uniformly alerted the parties that any deadlines not mentioned in the amended scheduling orders "remain[ed] unchanged."[1] Accordingly, Plaintiff's motion seeks modification of the scheduling order and leave to amend the complaint. Therefore, Plaintiff "must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

The "good cause" standard is a "threshold inquiry to consider whether amendments should be allowed after a scheduling order deadline has passed." *Id.*

---

[1] *See* Am. Sched. Ord (doc. 48) at 1; 2d Am. Sched. Ord. (doc. 50) at 1; 3d Am.

Page 5

at 1241. It requires "the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Id.* (citations and quotations omitted)

Under Federal Rule of Civil Procedure 15, a court "should freely give" leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Amendment should not be allowed when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposition party by virtue of allowance of the amendment, [or] futility of [the] amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[T]he decision to grant leave to amend the pleadings is within the discretion of the trial court," and the court of appeals "will not reverse the trial court's discretion absent an abuse of discretion." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) (citations and quotations omitted); *see also Gorsuch*, 771 F.3d at 1240 (applying the abuse-of-discretion standard to requests to modify the scheduling order).

If the Court determines that there is no good cause under Rule 16, it need not examine whether leave to amend should be granted under Rule 15. *Gorsuch*, 771 F.3d at 1242.

## **LEGAL ARGUMENT**

---

Sched. Ord. (doc. 53) at 1; 4th Am. Sched. Ord. (doc. 59) at 1.

1. **Plaintiff has not shown "good cause" to amend the scheduling order.**

In this case, leave to amend should be denied because Plaintiff has not established good cause to amend the scheduling order to allow amendment of her complaint based the June 1, 2021 deadline.

Rule 16 provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). It is "arguably more stringent than Rule 15's" standards. *Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1019 (10th Cir. 2018) (citations and quotations omitted). It "does not focus on the bad faith of the movant, or the prejudice to the opposing party." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). Instead, "Rule 16 requires diligence …." *Husky Ventures*, 911 F.3d at 1019.

For example, good cause may be shown "for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Gorsuch*, 771 F.3d at 1240. However, a movant "cannot establish good cause if" the movant "knew of the underlying conduct but simply failed to raise [its] claims." *Husky Ventures*, 911 F.3d at 1019 (citations and quotations omitted); *accord Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

In this case, Plaintiff cannot show diligence underlying the good cause standard. There is no change in law or newly discovered fact justifying the

reexamination of the pleading-amendment deadline.

### 1.1. There is no change in the applicable law.

The applicable law of § 1983 has not changed—Plaintiff does not cite a case newer than 2016 in either her Motion for Leave or in her Proposed Third Amended Complaint.[2] This cannot be the basis of "good cause."

### 1.2. There are no newly discovered facts supporting good cause.

Plaintiff cannot also allege good cause through discovery of new facts not available earlier. An analysis of the new facts by category shows why Plaintiffs cannot rely on this reasoning.

- *Previous incidents of sexual grooming or misconduct in the District.*

To support her claim that the District had a "clear pattern" of teachers grooming students, Plaintiffs point to three instances where District employees were charged or separated from their employment with the District because of allegations of sexual misconduct.[3] But Plaintiff did not learn of these instances through discovery. As admitted by Plaintiff in the proposed amended complaint, Plaintiff learned of them through news reports which were all publicly available well before the June 1, 2021 deadline to amend the pleadings.[4]

Likewise, Plaintiff did not ask about these instances until her Third Set of

---

[2] *See* Pl.'s Mot. for Leave (doc. 68) at 9–11 (custom, practice, and policy), 14–15 (state-created danger); Pl.'s Prop. 3d Am Complaint Redline (doc. 68-2) at ¶¶ 51–75.

[3] Prop. 3d Am. Complaint Redline at ¶¶ 76–83.

Discovery Requests, which were served on April 6, 2022.[5] Waiting to ask about facts that were in the public domain until 10 months after the deadline to amend pleadings is not "diligent" as required by Rule 16. *See Vazirabadi v. Denver Pub. Sch.*, 820 F. App'x 805, 809–10 (10th Cir. July 23, 2020) (unpublished) (concluding no "good cause" when plaintiff waited more than 100 days to add claims against parties once he knew about them from discovery).

- *State-created danger facts*

Plaintiffs also attempt assert a state-created danger theory, actionable under the substantive rights afforded by the Due Process Clause. But Plaintiff was not diligent in asserting this claim, either.

Plaintiff alleges that the District increased Plaintiff's vulnerability to being sexually groomed by allowing Plaintiff to be Drew Tutt's teachers' assistant, soccer aid, and failing to properly respond to reports of Tutt's [inappropriate conduct.]"[6] But Plaintiffs knew—or reasonably should have known—about all of those facts already. They were already in the complaint.[7]

Plaintiff alleges that she did not learn about the District's *reasons* for not reporting Mr. Tutt to Utah educational disciplinary authorities until she deposed

---

[4] *Id.* nn. 55–57.
[5] *See* Interrogatory No. 11, Pl.'s 3d Set of Discovery Requests, attached hereto as Exhibit C.
[6] Prop. 3d Am. Complaint Redline ¶ 113.
[7] Prop. 3d Am. Complaint Redline ¶¶ 87, 90–93.

Page 9

District H.R. Director Jessica Bennington on July 26, 2022, but that misses the mark. Plaintiff knew that Tutt had not been reported for his conduct that was reported to the school in March of 2016.[8] And the requirements to report boundary violations are found in Utah Administrative Law, which is publicly available at any time. *See* Utah Code §§ 53E-6-604, -701; Utah Admin. Code R277-516-8 (2016). There were no new facts of any consequence, and Plaintiff was not diligent in bringing this claim. *See Vivint, Inc. v. N. Star Alarm Servs, LLC.* No. 2:16-CV-00106-JNP-EJF, 2018 WL 3215663, at * 3 (D. Utah Feb. 5, 2018) (concluding no good cause when the parties had knowledge of, or should have had knowledge of, an operative agreement that was relevant to the case, even though the document itself was discovered during depositions).

- *Policy Violations*

Finally, Plaintiff alleges that she did not have information about whether the District's policies related to Title IX, boundary violations, and grooming had changed from 2016 (the year Plaintiff's mother reported that her daughter was Snapchatting late at night with Tutt) and today. Even if Plaintiff had provided the necessary documents to support her argument,[9] it fails. Plaintiff's proposed complaint belies that this information was necessary to add a *Monell* claim, and it

---

[8] *See, e.g.,* id. at ¶¶ 122–130.
[9] Plaintiff cited to Exhibits 3 through 8, but did not attach them, either to the first Motion for Leave to Amend that was withdrawn, or to the active one.

does not show that Plaintiff was diligent in attempting to get the information she believes she needed.

In her first set of discovery requests, plaintiff requested "All documents relating to Ogden City School District's Policies and Procedures, including any policies and procedures specific to Title IX compliance, with any past iterations of said Policies and Procedures."[10] Defendant objected to the request as overbroad and interpreted the request "as requesting policies and procedure related to Title IX compliance, employee internet use policies, and standards of behavior."[11] Plaintiff never objected to the limiting interpretation or sought any discovery order on it. The District provided polices as part of its initial disclosures,[12] and continued to provide policies and training materials, including in a production on August 2, 2021.[13]

And those documents are what Plaintiff now uses to support her claim of policy violations. In her proposed Third Amended Complaint, she alleges specific policies that she claims were violated or were insufficient and cites to the document production from August 2, 2021, in support.[14] So Plaintiff had at least

---

[10] *See* Def.'s Resp. to Pl.'s First Set of Discovery, Req. for Production No. 4, attached as Exhibit A.
[11] *Id.*
[12] *Id.*
[13] *See* Letter from K. Kaiser to M. Young and L. Hunt (Aug. 2, 2021), attached as Exhibit B.
[14] Prop. 3d Am. Compl. nn. 58–61 (citing to OSD000407 & -408); *cf.* Ex. B (noting

Page 11

the basic information that Plaintiff feels is sufficient to support her *Monell* policy violation in August of last year, only two months after the deadline to amend the pleadings had passed. And she waited until August of this year to seek leave to add the claim.

As noted by Plaintiff, supplementary disclosures responsive to Plaintiff's First Set of Discovery were provided on December 21, 2022 and February 4, 2022. But even assuming that those disclosures were relevant to Plaintiff's new claim, that still means that Plaintiff had the information six months before filing her leave to amend. That is not diligence.

Indeed, Plaintiff's counsel has both informally and during deposition questioning asked about the effective date of the District's sexual harassment and other policies. The District, through deposition answers and through informal responses, has attempted to clarify which policies were enacted when. And some delay has been occasioned through the slow review of electronically stored information and other circumstances. But as seen from Plaintiff's proposed amended complaint, Plaintiff has had the necessary information to raise this issue for months, if not years. Waiting this long is not diligent. *See Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015) (concluding that a party was not diligent when there was a four-month delay between the time additional

---

that, on August 2, 2021, those documents were produced).

evidence is discovered and the motion for leave to amend was filed). And Plaintiff cannot simply argue that "uncooperative behavior" during discovery excuses the delay. *See Husky Ventures*, 911 F.3d at 1021 (concluding that when a party does not "act with reasonable diligence in unearthing—through the customary tools of discovery—the ostensibly 'newly discovered evidence,'" that leave to amend should be denied, notwithstanding a conclusory allegation of alleged "uncooperative behavior" from the opposing party).

### 1.3. Instead, Plaintiff's amendment is an attempt at seriatim pleading.

Instead of injecting newly discovered facts into previously untenable legal theories, Plaintiff's motion is an attempt to create a moving target of litigation based on strategic litigation decisions.

A party cannot "make the complaint a moving target," to "salvage a lost case by untimely suggestion of new theories of recovery, or "to present theories seriatim in an effort to avoid dismissal." *Minter v. Prime Equipment Co,.* 451 F.3d 1196, 1206 (10th Cir. 2006) (citations and quotations omitted) (discussing amendments under Rule 15).

In this case, Plaintiffs started with a complaint that included broad claims under federal and state law.[15] Some of those claims were voluntarily dismissed by the plaintiffs; others were dismissed by the Court. The case has been

winnowed down.  But Plaintiff now seeks to unjustly expand the case, a few weeks before discovery closes, likely because Plaintiff is second-guessing the claims brought in the complaint in the first place.

In *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022), the U.S. Supreme Court held that only contractual remedies (which do not normally include emotional distress damages) are available for private rights of action flowing from federal statutes enacted pursuant to Congress's Spending Clause power, like Title IX. *Id.* at 1570–72. As a result, Plaintiff's Title IX claim might not provide all the monetary relief expected.  Instead, Plaintiff seeks to amend the complaint to add § 1983 claims—which contain a panoply of tort remedies—to compensate.  But their decision not to include a § 1983 claim earlier (whether knowing or not) was a strategic one. And when a party's late amendment "reflect[s] 'second guessing' of earlier tactical decision to forego" the claims, the amendment should not be allowed.  *Estrada v. Martin Marietta Materials, Inc.*, No. No. 1:20-cv-00375-REB-SKC, 2020 WL 9424368, at * 3 (citations and quotations omitted) (unpublished).

Plaintiff's claims here are not an attempt to inject newly discovered facts into previously unavailable legal theories.  Instead, Plaintiff "knew of the underlying conduct but simply failed to raise [her] claims" earlier. *Gorsuch*, 771

---

[15] See Compl.,Ex. A to Notice of Removal (doc. 2-1).

Page 14

F.3d at 1240.  She has not shown "good cause" through diligence, and the motion should be denied.

### 2. Plaintiff fails the Rule 15(a) standard.

Even if the Court concludes that Plaintiff has established "good cause," the motion should still be denied because Plaintiff cannot meet Rule 15's(a)(2)'s amendment standard.

In particular, Plaintiff has unduly delayed in filing the motion, and amendment will unduly prejudice the District.

### 2.1. Plaintiff unduly delayed seeking the amendment.

Asserting that she has met Rule 15's standards, Plaintiff cites to a Utah Court of Appeals opinion interpreting the state rule's amendment procedures.[16] However, in the Tenth Circuit, a court "focuses primarily on the reasons for the delay." *Minter*, 451 F.3d at 1206.  For the same reasons as stated above, Plaintiff does not have good reasons for the delay.  Most of the information Plaintiff claims was newly discovered was available in the public, already alleged, or available early on in discovery. There is no adequately asserted reason why Plaintiff waited so long.  *See, e.g.*, *Vivent*, 2018 WL 3215663, at * 7.

### 2.2. The District would be unfairly prejudiced if the amendment was allowed.

Next, the District will be unfairly prejudiced if the amendment is permitted.

---

[16] Pl.'s Mot. at 8 (citing *Evans v. B&E Pace, Inv. LLC*, 2018 UT App 37).

The determination of prejudice is the "most important factor" in deciding whether to allow leave to amend. *Minter*, 451 F.3d at 1207. Unfair prejudice exists when an amendment "unfairly affects the defendants in terms of preparing their defense to the amendment" such as when the amended claims "rise out of a subject matter different from what was set forth in the complaint and raise significant new issues." *Id.* at 1208 (citations and quotations omitted).

In this case, the District would be unduly, and significantly, prejudiced if the amendment were allowed. Plaintiff's new claims raise new, broad legal theories. The only claim existing in this case currently is a Title IX claim that the District had actual knowledge of harassment of Plaintiff on the basis of sex in the District's programs or activities, and remained deliberately indifferent to the discrimination. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998). That requires an examination of the knowledge a relevant person (in this case, one school principal), what he had knowledge of, whether the District's response was reasonable, and whether the deliberate indifference caused Plaintiff to be denied the benefits of an educational program. Plaintiff's new claims are much broader, looking at patterns, practices, policies and procedures throughout the District over a much longer period of time. That claim requires the Plaintiff to show that the someone related to policies and practices that go back as far as 2012. This means significant historical discovery, locating individuals who have

not been employed with the district for a long time, and to reconstruct training materials, policies, and practices that, except for Plaintiff's status as a minor, would have long been barred by the statute of limitations.

Additionally, this all must be done at the in a case that was filed in 2020. This Court has repeatedly warned the parties about completing discovery within a time to allow the case to be tried within three years. After granting its final extension, the Court warned the parties to take "all necessary steps to comply with" the deadlines in the case.[17] Candidly, because of additional unforeseen circumstances, the parties may need to seek a short extension of the discovery deadline for the District to provide requested documents, and or Plaintiffs to take all the depositions they seek. But even if that is the case, a few weeks' extension pales in comparison to the many more months the District will need to investigate historical events, find relevant policies and practices, locate relevant witnesses, and properly comply with its Rule 26 disclosure deadlines. Plaintiff's claims raise "significant new factual issues" that would require "necessary and [potentially] substantial" additional work in the case, further delaying it. *Vivint, inc.*, 2018 Wl 3215663, at * 6. This would work significant prejudice to the District, and on that basis the motion should be denied.

---

[17] 4th Am. Sched. Ord. (doc. 59) at 1.

## CONCLUSION

For these reasons, Defendants request that the Court denies Plaintiff's Motion.

RESPECTFULLY SUBMITTED THIS 21st day of September, 2022.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/
KYLE J. KAISER
Assistant Utah Attorney General
Attorney for Defendant

## WORD COUNT CERTIFICATION

"I, Kyle J. Kaiser, certify that this Opposition to Leave to Amend contains 3,038 words including the sections listed in DUCivR 7-1(a)(5)(A) and excluding the sections listed in DUCivR 7-1(a)(5)(B) and complies with DUCivR 7-1(a)(4).").

Dated: September 21, 2022   Signed: /s/
                                    Kyle J. Kaiser