UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| JANE DOE 1,<br><br>        Plaintiff,<br><br>v.<br><br>OGDEN CITY SCHOOL DISTRICT,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (DOC. NO. 68)**<br><br>Case No. 1:20-cv-00048<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiff Jane Doe 1's Motion for Leave to File Third Amended Complaint.[1]  Ms. Doe seeks to amend her complaint to add three new causes of action against Ogden City School District pursuant to 42 U.S.C. § 1983.[2]  Ms. Doe attached a proposed third amended complaint to her motion.[3]  The School District opposes the motion, arguing Ms. Doe has not shown good cause to amend, the proposed amendment is untimely, and amendment will be unduly prejudicial.[4]  The court held a hearing on December 12, 2022.[5]

Ms. Doe has satisfied the good-cause standard under Rule 16 of the Federal Rules of Civil Procedure because she discovered new information giving rise to additional claims in July 2022 and she demonstrated diligence in seeking this information.  Ms. Doe has also satisfied the

---

[1] ("Mot.," Doc. No. 68.)

[2] (*Id.* at 1, 10–16.)

[3] (*See* Ex. A to Mot., Prop. Third Am. Complaint, Doc. No. 68-1.)

[4] (*See* Def.'s Revised Opp'n to Pl.'s Mot. for Leave to File Third Am. Compl. ("Opp'n") 7, 15–16, Doc. No. 73.)

[5] (*See* Minute Entry for Hr'g, Doc. No. 81.)

requirements of Rule 15 of the Federal Rules of Civil Procedure because her motion for leave to amend is timely in light of the newly discovered information, she provided adequate explanation for any delay in seeking leave to amend, and the School District will not be unduly prejudiced where Ms. Doe's additional claims rely on the same underlying proposition as her existing claims and additional discovery will be limited.  Accordingly, the motion is granted.

BACKGROUND

In this Title IX[6] action, Ms. Doe alleges her teacher, Mr. Tutt, groomed and sexually assaulted her.[7]  Ms. Doe alleges this occurred while Mr. Tutt was employed by the School District and the School District engaged in negligent employment, retention, and supervision—in addition to violating its obligations under Title IX.[8]  Discovery was stayed on June 2, 2020, pending resolution of the School District's motion to dismiss.[9]  In the interim, Ms. Doe filed a motion for leave to file a second amended complaint.[10]  On February 24, 2021, both the School District's dismissal motion and Ms. Doe's motion for leave to amend were granted in part and

---

[6] *See* 20 U.S.C. §§ 1681–1688.

[7] (Second Am. Compl. ¶ 3, Doc. No. 35.)

[8] (*See id.* ¶¶ 6–7.)

[9] (*See* Order on Stipulated Mot. to Stay Disc. and for Further Schedule, Doc. No. 12; Ogden City Sch. Dist.'s Mot. to Dismiss, Doc. No 13.)

[10] (Pls.' Mot. for Leave to Am. Compl., Doc. No. 21.)

denied in part.[11]  Ms. Doe filed her second amended complaint on March 10, 2021,[12] and a new scheduling order was issued on April 20, 2021.[13]

The scheduling order set the close of fact discovery as November 30, 2021, and the deadline to file motions to amend pleadings as June 1, 2021.[14]  Since that time, the parties have stipulated to four extensions of the fact discovery deadline.[15]  But none of these stipulated extensions addressed the deadline to amend pleadings.  Thus, while the most recent scheduling order set the close of fact discovery as October 11, 2022, the deadline to amend pleadings remained June 1, 2021.[16]  Due to the stay of discovery and delays resulting from the COVID-19 pandemic, the School District served its initial disclosures on April 23, 2021.[17]

Ms. Doe served her first set of discovery requests on June 14, 2021.[18]  Among other things, she asked for information on the School District's practices, policies, and procedures. Interrogatory 2 and Request for Production ("RFP") 4 are particularly relevant to this motion. Interrogatory 2 asks the School District to "[d]escribe with reasonable particularity the process

---

[11] (*See* Minute Order, Doc. No. 34.)

[12] (*See* Doc. No. 35.)

[13] (Scheduling Order, Doc. No. 42.)

[14] (*Id.*)

[15] (*See* Am. Scheduling Order, Doc. No. 48; Second Am. Scheduling Order, Doc. No. 50; Third Am. Scheduling Order, Doc. No. 53; Fourth Am. Scheduling Order, Doc. No. 59.)

[16] (*See* Fourth Am. Scheduling Order, Doc. No. 59.)

[17] (Pl.'s Reply to Def.'s Opp'n to Mot. for Leave to File Third Am. Compl. ("Reply") 3, Doc. No. 76.)

[18] (Mot. 2, Doc. No. 68; Reply 3, Doc. No. 76; Ex. 1 to Reply, Pl.'s First Set of Disc. Reqs., Doc. No. 76-1.)

for vetting, hiring, and training [y]our teachers, including but not limited to background checks, employee handbooks, security training, sexual harassment training, and protocol for incident reporting."[19]  RFP 4 asks the School District to produce "[a]ll documents relating to Ogden City School District's Policies and Procedures, including any policies and procedures specific to Title IX compliance, with any past iterations of said Policies and Procedures."[20]

The School District responded to Ms. Doe's first set of discovery requests on July 12, 2021.[21]  In its response, the School District objected to Interrogatory 2 as "vague as to time" and irrelevant to Ms. Doe's Title IX claim because it "asks about the District's current process," while her claim is "based on facts occurring from 2015 through 2017."[22]  The School District also indicated it would "provide, at a mutually convenient time, business records" including its "policies and teachers' training materials from the District and school-level regarding security, sexual harassment, incident reporting, and other policies."[23]

The School District objected to RFP 4 as "vague and overbroad" on the grounds that "it seeks every policy and procedure of the Ogden School District, including thousands of policies and procedures not relevant to this case."[24]  The School District interpreted the RFP "as requesting polices and procedure related to Title IX compliance, employee internet use policies,

---

[19] (Ex. 1 to Reply, Pl.'s First Set of Disc. Reqs., Doc. No. 76-1 at 9.)

[20] (*Id.* at 10.)

[21] (*See* Ex. A to Opp'n, Def.'s Resp. to Pl.'s First Set of Disc. Reqs., Doc. No 73-1.)

[22] (*Id.* at 5 (emphasis omitted).)

[23] (*Id.* at 7.)

[24] (*Id.* at 12–13.)

and employee standards of behavior"[25] while also representing that "[a]dditional policies

[would] be produced at a time mutually convenient to the parties."[26]  Rather than challenging or

seeking to enforce the School District's objections, the parties continued to communicate in an

attempt to resolve the disputes regarding Interrogatory 2 and RFP 4—and the School District

ultimately produced materials outside the 2015 to 2017 time period proposed in its objection.[27]

 Ms. Doe served her second set of discovery requests on July 2, 2021, and the School

District served its responses on July 30, 2021.[28]  On July 26, 2021, the School District provided

policies and procedures, as well as redlined changes reflecting the history of policy changes, in a

supplemental production responsive to RFP 4.[29]  Included in this production was Policy 7.6.602

(Employee Code of Conduct and Standards of Behavior)—a policy which included redlined

changes.[30]  Also included was Policy 7.6.601 (Discrimination and Other Prohibited Activities).[31]

---

[25] (*Id.* at 13.)

[26] (*Id.*)

[27] (*See* Ex. 3 to Reply, Email from Kyle Kaiser to Lauren M. Hunt and Michael W. Young (July 12, 2021), Doc. No. 76-3; Ex. 4 to Reply, Electronic Letter from Kyle J. Kaiser to Michael W. Young and Lauren Hunt (July 26, 2021), Doc. No 76-4; Ex. 7 to Reply, Electronic Letter from Michael W. Young to Kyle Kaiser and Jason Dupree (Apr. 7, 2021), Doc. No. 76-7; Ex. 8 to Reply, Email from Kyle Kaiser to Candace Johns and Jason Dupree (Apr. 7, 2021), Doc. No. 76-8; Ex. 11 to Reply, Email from Kyle Kaiser to Lauren M. Hunt and Michael W. Young  (July 26, 2021), Doc. No. 76-11; Ex. 15 to Reply, Def.'s Suppl. R. 26(a)(1) Initial Disclosures, Doc. No. 76-15 (producing policy documents from June 2008 to November 2019); Ex. 16 to Reply, Def.'s Suppl. Resp. to Pl.'s First Set of Disc. Reqs., Doc. No. 76-16 (producing policies and procedures and red-lined changes from June 2008 to September 2020).)

[28] (*See* Reply 4, 6, Doc. No. 76.)

[29] (*Id.* at 5.)

[30] (*Id.*)

[31] (*Id.*)

This policy did not include redlined changes.[32]  The School District also provided additional supplemental productions to Ms. Doe's first set of discovery requests, on August 2, 2021 and February 4, 2022.[33]  These supplements included training materials from Jessica Bennington, a human resources director.[34]

Ms. Doe argues she was left confused after receiving these supplemental productions.[35] According to Ms. Doe, some versions of the Policy 7.6.601 seemed to contradict other documents produced in discovery, making the history of changes to the policy unclear.[36]  Ms. Doe asserts that she served her third set of discovery requests on April 6, 2022 in an attempt to clarify the policies and procedures in place at given times.[37]  Interrogatory 11 asked the School District to:

> Identify and describe in detail any remedial steps taken or policies enacted in the District after three District teachers (Liza Roberts in 2012, an unidentified teacher allowed to resign in 2014, and James Davenport in 2015) were reported and/or criminally charged for the sexual grooming and/or assault upon students. For each policy, procedure, or practice identified, provide the date that policy, procedure, or practice was implemented, and if applicable, the date it was terminated. If any

---

[32] (*See id.*)  Ms. Doe asserts the lack of changes led her to believe the version of the policy produced was in place from June 2008 to November 2019.  (*Id.*)

[33] (*See id.* at 6.)

[34] (*See id.*)

[35] (*See id.*)

[36] (*See id.*)

[37] (*See id.*; Ex. 6 to Reply, Pl.'s Third Set of Disc. Reqs., Doc. No. 76-6.)

policy, procedure, or practice varies on a case-by-case basis, please explain what factors influence the application of that policy, procedure, or practice.[38]

The School District responded to Ms. Doe's third request on June 6, 2022, indicating it believed "there were no policy changes following the Davenport incident in 2015."[39] The School District's response did not address any other incidents.

On April 7, 2022, Ms. Doe sent a letter to the School District's counsel "hoping to get clarification on any substantive amendments to the policies and procedures already produced, including delineation of what policies and procedures were in place during which specific years."[40]  The School District's counsel responded, stating he understood Ms. Doe's request and would "talk with our client contact to see if we can give you some clarification or if there are other documents that will help."[41]  On May 19, 2022, the parties held a video meeting to clarify the policy revisions, among other things.[42]  Ms. Doe asserts she left the May 19 meeting with the understanding that the School District had produced the complete histories of Policy 7.6.602 (redlined) and Policy 7.6.601 (non-redlined).[43]  As of July 2022, both parties believed everything had been produced and no discovery remained outstanding.[44]  Accordingly, Ms. Doe set the

---

[38] (Ex. 6 to Reply, Pl.'s Third Set of Disc. Reqs., Doc. No. 76-6 at 8.)

[39] (Ex. 12 to Reply, Def.'s Resp. to Pl.'s Third Set of Disc. Reqs. 10, Doc. No 76-12.)

[40] (Ex. 7 to Reply, Electronic Letter from Michael W. Young to Kyle Kaiser and Jason Dupree (Apr. 7, 2021), Doc. No. 76-7.)

[41] (Ex. 8 to Reply, Email from Kyle Kaiser to Candance Johns and Jason Dupree (Apr. 7, 2021), Doc. No. 76-8.)

[42] (Reply 7, Doc. No 76.)

[43] (*See id.*)

[44] (*See* Ex. 13 to Reply, Emails between Lauren M. Hunt and Kyle Kaiser (July 22, 2022), Doc. No. 76-13.)

deposition of the School District's human resources director, Ms. Bennington, on July 26, 2022.[45]

At this deposition, Ms. Doe asked Ms. Bennington questions about the history of the policies and procedures which had been produced, specifically, Policy 7.6.602 (Employee Code of Conduct and Standards of Behavior) and 7.6.601 (Discrimination and Other Prohibited Activities).[46] Ms. Bennington expressed so much confusion about the history of the policies that the parties agreed to continue the deposition until Ms. Bennington could review and verify the history.[47] Although Ms. Bennington was unable to verify the history of the policies, Ms. Doe asserts Ms. Bennington's responses made clear "that the version of Policy 7.6.601 provided to [Ms. Doe] to date was *not* in place before 2019," contrary to what Ms. Doe had been led to believe.[48] Ms. Bennington also confirmed the School District made no substantive policy changes in response to any of the three prior instances of sexual misconduct by teachers (raised in Interrogatory 11).[49]

Ms. Doe also deposed Charlotte Della Parry—a former principal at Mound Fort Junior High within the Ogden School District—on July 27, 2022.[50] According to Ms. Doe, Ms. Parry's

---

[45] (Reply 8, Doc. No. 76.)

[46] (*See id.*; Mot. 5, Doc. No. 68; Ex. 14 to Reply, Jessica Bennington Dep. 135:22–138:24, Doc. No. 76-14.)

[47] (*See* Mot. 5, Doc. No. 68; Reply 8, Doc. No. 76; Ex. 14 to Reply, Jessica Bennington Dep. 135:22–138:24, Doc. No. 76-14.)

[48] (Reply 8, Doc. No. 76 (emphasis in original).)

[49] (*See* Mot. 1, 5, Doc. No. 68; Reply 9, Doc. No. 76; Ex. 14 to Reply, Jessica Bennington Dep. 222:12–223:13, Doc. No. 76-14.)

[50] (Mot. 6, Doc. No 68.)

deposition revealed the School District "did not train its teachers or employees on appropriate uses of cell phones and social media between employees and students in the time period before a Mound Fort teacher sexually groomed and assaulted a young man in 2012."[51]

On September 7, 2022, Ms. Doe filed her motion for leave to file a third amended complaint.[52]  Ms. Doe filed the motion six weeks after Ms. Parry's deposition and Ms. Bennington's initial deposition (but before Ms. Bennington's continued deposition), and approximately one month before the close of fact discovery.  Ms. Doe argues additional claims under 42 U.S.C. § 1983 are justified by "recently discovered new facts and admissions."[53]  Ms. Doe's proposed § 1983 claims are based on *Monell*[54] and state-created danger theories.[55]  In her first *Monell* claim, Ms. Doe alleges the School District had an "informal policy and custom of failing to enforce, (or 'a policy of inaction' regarding) its own policies about student supervision" which is "illustrated by the pattern of teachers caught for grooming and sexually

---

[51] (*Id.*)

[52] (*See generally id.*)

[53] (*Id.* at 1.)

[54] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Ms. Doe seeks to assert two § 1983 claims based on *Monell*, which requires a plaintiff to show "1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Poore v. Glanz*, 724 F. App'x 635, 644 (10th Cir. 2018) (unpublished).

[55] Ms. Doe seeks to assert one § 1983 claim under a state-created danger theory, which requires a plaintiff to demonstrate "(1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant['s] conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendant[] acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking."  *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003).

abusing students" and which persisted despite inappropriate acts by previous teachers.[56]  In her

second *Monell* claim, Ms. Doe alleges the School District's failure to train and/or supervise

showed a custom of failing to enforce its policies which led to a pattern of constitutional

violations against students' right to bodily integrity and safety.[57]  In her state-created danger

claim, Ms. Doe alleges the School District failed to enforce its own policies regarding

supervision, and acted recklessly by failing to implement effective policies, thereby creating

danger or increasing Ms. Doe's "vulnerability to the danger of [Mr.] Tutt."[58]

On September 14, 2022, a week after Ms. Doe filed her motion for leave to amend,[59] the

School District supplemented its initial disclosures and its first set of discovery responses.[60]  In

its supplemental production, the School District produced "the current Policy No. 7.6.601,

Discrimination and Other Prohibited Activities Policy," "the previous Policy No. 7.6.601, dated

June 11, 2008," and "revisions to the policy from June 2008 to November, 2019."[61]  The School

District also disclosed "a clerical error was made on the form" and that "[r]ather than the policy

being simply reviewed, it was also revised on September 17, 2020."[62]  Further, the School

---

[56] (Ex. A to Mot., Prop. Third Am. Complaint ¶¶ 135–36, Doc. No. 68-1.)

[57] (*Id.* ¶¶ 139–43.)

[58] (*Id.* ¶¶ 148, 154.)

[59] (*See* Mot., Doc. No. 68.)

[60] (*See* Reply 9, Doc. No. 76; Ex. 15 to Reply, Def.'s Suppl. R. 26(a)(1) Initial Disclosures, Doc. No. 76-15; Ex. 16 to Reply, Def.'s Suppl. Resp. to Pl.'s First Set of Disc. Reqs., Doc. No. 76-16.)

[61] (Ex. 15 to Reply, Def.'s Suppl. R. 26(a)(1) Initial Disclosures, Doc. No. 76-15 at 3 (emphasis omitted).)

[62] (*Id.*)

District produced additional documents responsive to RFP 4, including "updated policies and procedures and red-lined changes made to the policy and procedures from June 11, 2008 to September, 2020."[63]

After filing her underlying motion, Ms. Doe completed Ms. Bennington's deposition and three other depositions.[64]  She claims these provide further factual support for the § 1983 claims in her proposed third amended complaint because they confirm the School District made no policy changes after the previous incidents of teacher misconduct.[65]

LEGAL STANDARDS

A party seeking to amend a complaint after the deadline to amend pleadings has passed must (1) demonstrate good cause under Rule 16 of the Federal Rules of Civil Procedure and (2) satisfy the standards in Rule 15 of the Federal Rules of Civil Procedure.[66]

Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent."[67]  Rule 16 "requires the movant to show the scheduling deadlines cannot be met

---

[63] (Ex. 16 to Reply, Def.'s Suppl. Resp. to Pl.'s First Set of Disc. Reqs. 2, Doc. No. 76-16.) Notably, Policy No. 7.6.601 (Discrimination and Other Prohibited Activities) and Policy No. 7.6.602 (Employee Code of Conduct and Standards of Behavior) are included in this production. (*See* Ex. 15 to Reply, Def.'s Suppl. R. 26(a)(1) Initial Disclosures, Doc. No. 76-15 at 3.)

[64] (*See* Reply 10, Doc. No. 76.)

[65] (*Id.*)

[66] *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014); *see also Vivint, Inc. v. NorthStar Alarm Servs., LLC*, No. 2:16-cv-00106, 2018 U.S. Dist. LEXIS 48569, at *10 (D. Utah Mar. 23, 2018) (unpublished) (explaining why a Rule 16 analysis is necessary, noting, when a "cutoff date for filing amended pleadings has come and gone[,] [i]f the court grants leave to amend, it must also simultaneously modify the cutoff date for filing amended pleadings.  If the court does not simultaneously modify the cutoff date for filing amended pleadings, any amended pleading that [the parties] file[] would be ineffective").

[67] Fed. R. Civ. P. 16(b)(4).

11

despite [the movant's] diligent efforts."[68]  The rule's good-cause requirement may be satisfied

"if a plaintiff learns new information through discovery or if the underlying law has

changed."[69]  But Rule 16's diligence requirement is not met if the movant "knew of the

underlying conduct [giving rise to their claims] but simply failed to raise [the] claims."[70]

"[C]ourts have considerable discretion in determining what kind of showing satisfies [the]

good[-]cause standard."[71]

Rule 15 permits a party to "amend its pleading only with the opposing party's written

consent or the court's leave."[72]  While the decision whether to grant leave to amend falls within

the court's discretion,[73] "[t]he court should freely give leave when justice so requires."[74]  This is

because the "purpose of [Rule 15(a)(2)] is to provide litigants the maximum opportunity for each

claim to be decided on its merits rather than on procedural niceties."[75]  Denying leave to amend

"is generally only justified upon a showing of undue delay, undue prejudice to the opposing

---

[68] *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (alteration in original) (internal quotation marks omitted).

[69] *Gorsuch*, 771 F.3d at 1240.

[70] *Husky Ventures*, 911 F.3d at 1020 (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015)).

[71] *Boulder Falcon, LLC v. Brown*, No. 2:22-cv-00042, 2022 U.S. Dist. LEXIS 139309, at *7–8 (D. Utah Aug. 3, 2022) (unpublished) (second and third alterations in original) (citing *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019)).

[72] Fed. R. Civ. P. 15(a)(2).

[73] *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

[74] Fed. R. Civ. P. 15(a)(2); *see also Minter*, 451 F.3d at 1204.

[75] *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018) (alteration in original) (quoting *Minter*, 451 F.3d at 1204).

party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[76]

ANALYSIS

**I.     Ms. Doe has Established Good Cause Under Rule 16(b)(4) Because She Discovered New Facts and Demonstrated Diligence.**

Rule 16's good-cause requirement may be satisfied "if a plaintiff learns new information through discovery or if the underlying law has changed."[77]  While courts may consider other factors,[78] the "primary consideration is whether the moving party can demonstrate diligence."[79] "[G]ood cause is likely to be found when the moving party has been generally diligent" and can provide "adequate explanation for any delay"[80] for "failing to move to amend prior to the cutoff date and for the length of time between learning of the new information warranting amendment and moving to amend."[81]  Importantly, "rigid adherence to the [s]cheduling [o]rder is not

---

[76] *Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 778 (10th Cir. 2021).

[77] *Gorsuch*, 771 F.3d at 1240.

[78] *See Kennedy v. Prot. One Alarm Monitoring, Inc.*, No. 2:16-cv-00889, 2017 U.S. Dist. LEXIS 68476, at *4 (D. Utah May 4, 2017) (unpublished) (noting other circuits have considered factors such as prejudice and notice to the non-moving party); *Boulder Falcon, LLC*, 2022 U.S. Dist. LEXIS 139309, at *13 (noting prejudice is a "relevant consideration" under Rule 16, but "the focus of the good-cause standard" is the movant's diligence).

[79] *Kennedy*, 2017 U.S. Dist. LEXIS 68476, at *4 (internal quotation marks omitted); *see also Boulder Falcon, LLC*, 2022 U.S. Dist. LEXIS 139309, at *13 ("[T]he focus of the good-cause standard is on [the movant's] diligence.").

[80] *Boulder Falcon, LLC*, 2022 U.S. Dist. LEXIS 139309, at *7 (alteration in original).

[81] *United States ex rel. Polukoff v. Sorensen*, No. 2:16-cv-00304, 2020 U.S. Dist. LEXIS 152196, at *17 (D. Utah Aug. 20, 2020) (unpublished) (citing *Birch*, 812 F.3d at 1248).

advisable" and "failure to seek amendment within the deadline may be excused due to oversight, inadvertence, or excusable neglect."[82]

The School District argues Ms. Doe lacks good cause to amend because (1) no newly discovered facts justify amending the pleading deadline and (2) Ms. Doe has not shown sufficient diligence.[83]

     *a. Ms. Doe Discovered New Information Giving Rise to Good Cause to Amend.*

The School District argues no newly discovered facts support a finding of good cause because (1) Ms. Doe had the basic information necessary to support *Monell* claims under § 1983 as early as August 2, 2021, or at least as of February 4, 2022,[84] (2) the previous incidents of teacher misconduct Ms. Doe relied on were publicly available,[85] and (3) Ms. Doe knew or reasonably should have known all the facts supporting her state-created danger theory of liability under § 1983.[86]  In response, Ms. Doe argues newly obtained information gives her good cause to amend.[87]

---

[82] *Pathak v. FedEx Trade Networks T & B Inc.*, No. 16-cv-01357, 2018 U.S. Dist. LEXIS 5218, at *5 (D. Colo. Jan. 11, 2018) (unpublished) (citing *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990)).

[83] (Opp'n 8, Doc. No. 73.)  The School District also argues Ms. Doe's amendment is an attempt at seriatim pleading.  (*See id.* at 13–15.)  While the School District raises this as a Rule 16 good-cause argument, (*see id.*), it relies on a case employing a Rule 15 analysis.  *See Minter*, 451 F.3d at 1205–06 & n.4.  Accordingly, this argument is addressed in the section discussing Rule 15.

[84] (*See* Opp'n 11–13, Doc. No. 73.)

[85] (*See id.* at 9.)

[86] (*See id.* at 9–11.)

[87] (*See* Mot. 17–18, Doc. No. 68; Reply 17, Doc. No. 76.)

The School District's first argument, that Ms. Doe had the information necessary to support her *Monell* claims at least as of February 4, 2022, is unpersuasive.  The School District first argues that because it provided policies and procedures as part of its initial disclosures and in supplemental productions on August 2, 2021, December 21, 2022, and February 4, 2022, Ms. Doe had all the information necessary to support her *Monell* claims at least as of February 2022.[88]  According to the School District, Ms. Doe's citation to documents from its August 2021 production in support of her proposed third amended complaint shows she had the "basic information" to support her claims as of this date.[89]  At the hearing, the School District also argued Ms. Doe did not need confirmation of its historical policies and procedures in order to bring her additional claims because § 1983 claims can be brought in the absence of written policies.

Ms. Doe contends she was previously unaware of the extent of the School District's "policy or custom of failing to address and investigate boundary violations of teachers"[90] until Ms. Bennington admitted the School District failed to update its policies, procedures, or training "in the wake of three teachers within the District sexually grooming and/or assaulting their students prior to [Ms. Doe's] similar abuse."[91]  Ms. Doe also argues Ms. Bennington's deposition made clear for the first time "that the version of Policy 7.6.601 provided to [her] . . .

---

[88] (*See* Opp'n 12, Doc. No. 73.)

[89] (*Id.*)

[90] (Mot. 18, Doc. No. 68.)

[91] (*Id.* at 1; Reply 5, Doc. No. 76; *see also* Ex. 14 to Reply, Jessica Bennington Dep. 222:12–223:13, Doc. No. 76-14.)

was not in place before 2019,"[92] directly contradicting what Ms. Doe had been led to believe up to that point.[93]  Ms. Doe contends she could not have raised her *Monell* claims in good faith before Ms. Bennington's deposition because her proposed claims require a "policy of inaction" regarding patterns of student harassment.[94]  And she only obtained sufficient information to assert these claims at Ms. Bennington's deposition.[95]

Ms. Doe has established she recently obtained new information sufficient to support a finding of good cause.  The record shows Ms. Doe repeatedly tried to obtain information on the School District's policy responses to previous sexual misconduct by teachers.  But she was met with unclear and contradictory responses.  Ms. Doe's first verification that the School District took no steps to update its policies, procedures, or training came from Ms. Bennington's July 2022 deposition.  And it was not until September 14, 2022, that the School District produced an accurate history of revisions for Policy 7.6.601.[96]  While the School District is correct that § 1983 claims may be brought in absence of a written policy, this is not a basis for denying a motion to amend.  Written policies can support § 1983 claims,[97] and Ms. Doe is justified in

---

[92] (Reply 8, Doc. No 76.)

[93] (*See id.* at 5.)

[94] (*Id.*)

[95] (*See id.* at 8–9.)

[96] (*Id.* at 14.)

[97] Ms. Doe may assert § 1983 claims under *Monell* by showing the existence of a municipal policy or custom that may take several forms, including: "(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers

relying on newly discovered policy information (including the failure to implement new policies) to raise her claims.  Where, despite her best efforts, Ms. Doe did not discover this policy and training information until shortly before she filed her motion, Rule 16's good-cause standard is satisfied.

The School District's second argument—that the information on prior incidents of sexual misconduct is not new because it was publicly available—is also unpersuasive.  The School District's argument is misplaced because Ms. Doe does not claim the actual incidents of sexual misconduct constitute new information supporting good cause.  Rather, it is the School District's response to these incidents (or lack thereof) which Ms. Doe relies on.  The School District has not shown the public availability of the actions it took.  While the School District disclosed its "belie[f] that there were no policy changes following the Davenport incident in 2015" in response to Ms. Doe's third set of discovery requests, it failed to address the two other incidents of teacher misconduct.[98]  Ms. Doe was unable to confirm the School District's lack of response until Ms. Bennington's deposition.

At the hearing, the School District also argued its policies and procedures were not new information because they were publicly available to Ms. Doe if she filed a Government Records Access and Management Act[99] (GRAMA) request.  This argument is unpersuasive where the School District's own witness, Ms. Bennington, could not identify what policies and procedures were in place at what times, despite having full access to the School District's historical

---

[98] review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Turner v. City of Tulsa*, 525 F. App'x 771, 773 (10th Cir. 2013) (unpublished).

[98] (Ex. 12 to Reply, Def.'s Resp. to Pl.'s Third Set of Disc. Reqs. 10, Doc. No 76-12.)

[99] Utah Code Ann. §§ 63G-2-101–63G-2-901.

changes.  It is unrealistic to suggest Ms. Doe could have obtained accurate and complete information responsive to her discovery requests from a GRAMA request.

Third, the School District argues Ms. Doe knew or reasonably should have known all relevant facts supporting her proposed state-created danger claim.[100]  The School District contends Ms. Doe knew she was at increased risk of being sexually groomed while working as Mr. Tutt's teachers' assistant and soccer aide, and knew Mr. Tutt's conduct had not been properly reported.[101]  Even if this is true, Ms. Doe has shown other newly discovered information giving rise to good cause to amend, as established above.  The newly discovered information supporting the *Monell* claims is sufficient for a finding of good cause to amend.

### b.  Ms. Doe Has Demonstrated Diligence

The School District also argues Ms. Doe has not established she acted diligently.[102] Specifically, the School District contends Ms. Doe was not diligent because she failed to challenge its objections to Interrogatory 2 and RFP 4,[103] and Ms. Doe's proposed third amended complaint relies on documents the School District produced during discovery (information already available to her).[104]  Ms. Doe, on the other hand, contends she diligently sought discovery regarding the School District's policies and procedures from the time of her

---

[100] (Opp'n 9–11, Doc. No. 73.)

[101] (*Id.* at 10; *see also* Ex. 2 to Mot., Prop. Third Am. Compl. Redline Version ¶¶ 87, 90–93, Doc. No. 68-2.)

[102] (Opp'n 8, Doc. No. 73.)

[103] (*See id.* at 11–12.)

[104] (*See id.* at 11–13.)

first set of discovery requests, served on June 14, 2021.[105]  Ms. Doe maintains she persistently

attempted to collect and clarify the School District's historical policies and procedures despite

the protracted discovery on the issue.[106]

Ms. Doe has demonstrated sufficient diligence.  Ms. Doe has sought the School District's

policies and procedures, including past iterations, since June 2021.[107]  Ms. Doe has

continuously sought clarity and additional information in the form of emails, letters, meetings

and conferrals, and additional discovery requests.[108]  There is no question discovery on these

issues "has been particularly protracted,"[109] but the record provides insight as to why.  It shows

significant and continued confusion by both parties regarding the School District's policies—

particularly Policies 7.6.601 and 7.6.602.  Ms. Bennington's deposition revealed this.  And Ms.

Doe had no way to know of this deficiency until the deposition, despite her continuous and

diligent efforts.

---

[105] (*See* Mot. 2–3, Doc. No. 68; Reply 14, Doc. No. 76 ("Plaintiff served three sets of discovery requests, sorted through four productions and six supplemental productions from the District, held a meeting and sent letters/emails in an attempt to clarify the policies, and deposed four people before Defendant provided the most substantive evidentiary support for Plaintiff's §1983 claims—the operative policy for Title IX and sexual harassment investigation that Plaintiff originally requested in June, 2021.").)

[106] (*See* Reply 4–5, 8–9, Doc. No. 76.)

[107] (*See* Ex. 1 to Reply, Pl.'s First Set of Disc. Reqs, Doc. No. 76-1.)

[108] (*See* Ex. 3 to Reply, Email from Kyle Kaiser to Lauren M. Hunt and Michael W. Young (July 12, 2021), Doc. No. 76-3; Ex. 4 to Reply, Electronic Letter from Kyle J. Kaiser to Michael W. Young and Lauren Hunt (July 26, 2021), Doc. No 76-4; Ex. 7 to Reply, Electronic Letter from Michael W. Young to Kyle Kaiser and Jason Dupree (Apr. 7, 2021), Doc. No. 76-7; Ex. 8 to Reply, Email from Kyle Kaiser to Candace Johns and Jason Dupree (Apr. 7, 2021), Doc. No. 76-8; Ex. 11 to Reply, Email from Kyle Kaiser to Lauren M. Hunt and Michael W. Young  (July 26, 2021), Doc. No. 76-11.)

[109] (Mot. 2, Doc. No. 68.)

The School District contends Ms. Doe's citation to documents the School District produced during discovery in support of her proposed third amended complaint shows Ms. Doe's lack of diligence because she had the necessary information "for months, if not years."[110] In support of this position, the School District relies on *Birch v. Polaris Industries, Inc.*[111] In *Birch*, the Tenth Circuit upheld the district court's finding that the plaintiff was not diligent in waiting four months after discovering additional evidence before asking for leave to amend.[112] The Tenth Circuit declined to consider the plaintiff's explanation for the delay because it was not raised before the district court.[113]

The circumstances of this case are distinguishable from those in *Birch*. The School District contends Ms. Doe possessed sufficient information to assert new claims by February 2022 at latest (seven months before seeking leave to amend).[114] But even as of February 2022, the information the School District provided as to its policies and procedures was riddled with inconsistencies and confusion. This confusion was not meaningfully resolved until Ms. Bennington's July 2022 deposition, at the earliest. And the School District produced new policy information as late as September 2022. It means little that Ms. Doe cited to discovery produced earlier in the case in her proposed third amended complaint, where she still lacked critical information. The School District seems to expect Ms. Doe to have asserted claims, relying in part on its policies and procedures, long before it provided Ms. Doe with complete

---

[110] (Opp'n 13, Doc. No. 73.)

[111] 911 F.3d 1238 (10th Cir. 2018).

[112] *See id.* at 1248.

[113] *See id.*

[114] (Opp'n 12, Doc. No. 73.)

and accurate information about the policies.  This would have required Ms. Doe "to predict the content of undisclosed [or inaccurate] discovery and, based on that prediction, make an informed decision about whether to move for leave to amend [her] pleadings."[115]  This is an unworkable approach.[116]

The School District's argument that Ms. Doe was not diligent because she did not challenge its objections to her discovery requests is also unavailing.  The record supports Ms. Doe's assertion that she did not challenge the School District's objections because the parties continued to meet and confer in good faith, and continued communication regarding the School District's responses to Ms. Doe's discovery requests.[117]  Indeed, the School District appears to have ceded its objections, at least in part, by producing materials beyond their parameters.[118]

Finally, Ms. Doe has provided an adequate explanation for her failure to modify the pleading deadline, which led her to file her motion well after the deadline set by the scheduling order.  "Failure to seek amendment within the deadline may be excused due to oversight,

---

[115] *Boulder Falcon, LLC*, 2022 U.S. Dist. LEXIS 139309, at *11.

[116] *See, e.g.*, *id.*

[117] (*See* Ex. 3 to Reply, Email from Kyle Kaiser to Lauren M. Hunt and Michael W. Young (July 12, 2021), Doc. No. 76-3; Ex. 4 to Reply, Electronic Letter from Kyle J. Kaiser to Michael W. Young and Lauren Hunt (July 26, 2021), Doc. No 76-4; Ex. 7 to Reply, Electronic Letter from Michael W. Young to Kyle Kaiser and Jason Dupree (Apr. 7, 2021), Doc. No. 76-7; Ex. 8 to Reply, Email from Kyle Kaiser to Candace Johns and Jason Dupree (Apr. 7, 2021), Doc. No. 76-8; Ex. 11 to Reply, Email from Kyle Kaiser to Lauren M. Hunt and Michael W. Young (July 26, 2021), Doc. No. 76-11.)

[118] (*See* Ex. 15 to Reply, Def.'s Suppl. R. 26(a)(1) Initial Disclosures, Doc. No. 76-15 (producing policy documents from June 2008 to November 2019); Ex. 16 to Reply, Def.'s Suppl. Resp. to Pl.'s First Set of Disc. Reqs., Doc. No. 76-16 (producing policies and procedures and redlined changes from June 2008 to September 2020).)

inadvertence, or excusable neglect."[119]  Ms. Doe explains the June 1, 2021 deadline to amend

pleadings was "inadvertently not modified"[120] when the other deadlines were modified, due to

clerical oversight.[121]  The June 2021 deadline would have given Ms. Doe little more than a

month to amend her pleadings after the School District served its initial disclosures (on April

23, 2021)[122]—even though the parties had engaged in no other discovery up to that point.[123]

This supports Ms. Doe's argument that the failure to modify the deadline to amend pleadings

was excusable oversight.[124]

 In sum, Ms. Doe has shown good cause to amend under Rule 16 where she discovered

new information at Ms. Bennington's July 2022 deposition and where she demonstrated

sufficient diligence.

## II. Ms. Doe's Motion to Amend Satisfies the Requirements of Rule 15(a)(2).

 Although Ms. Doe has shown good cause to amend under Rule 16, she must also satisfy

the requirements of Rule 15.[125]  Rule 15(a)(2) permits a party to "amend its pleading only with

---

[119] *Pathak*, 2018 U.S. Dist. LEXIS 5218, at *5.

[120] (Reply 13, Doc. No. 76.)

[121] (*See id.* at 3.)

[122] (*Id.*)

[123] (*See id.* at 2–3.)

[124] (*Id.* at 13.)  Although Ms. Doe asserts her failure to amend the pleading deadline was excusable, she does not apply the legal standard to her circumstances.  (*See id.*)  This does not preclude a finding that Ms. Doe has provided an adequate explanation of inadvertence or oversight because "[t]here is no controlling authority in the Tenth Circuit for the proposition that [a plaintiff] must make a showing of excusable neglect" to satisfy Rule 16(b)(4).  *S.G. v. Jordan Sch. Dist.*, No. 2:17-cv-677, 2019 U.S. Dist. LEXIS 225330, at *4 n.20 (D. Utah May 13, 2019) (unpublished).

[125] *See Gorsuch*, 771 F.3d at 1240.

the opposing party's written consent or the court's leave."[126]  While the decision whether to grant leave to amend falls within the court's discretion,[127] "[t]he court should freely give leave when justice so requires."[128]  Because the "purpose of [Rule 15(a)(2)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties,"[129] denying leave to amend "is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[130]

Ms. Doe argues her motion is timely in light of the new information discovered at Ms. Bennington's deposition and amendment will not unduly prejudice the School District.[131]  The School District argues Ms. Doe's motion is untimely and the amendment will result in undue prejudice.[132]

> ### a.  *Ms. Doe's Motion to Amend is Timely.*

To assess timeliness under Rule 15(a)(2) the court focuses on three primary factors:

> First, the court must examine the length of delay—[t]he longer delay, the more likely the motion to amend should be denied.  Second, the court must evaluate the reasons for the delay and deny leave to amend when the moving party has not offered an adequate explanation for their neglect.  Finally, a motion for leave to amend should be denied where the moving party knows or should have known of

---

[126] Fed. R. Civ. P. 15(a)(2).

[127] *See Minter*, 451 F.3d at 1204.

[128] Fed. R. Civ. P. 15(a)(2); *see also Minter*, 451 F.3d at 1204.

[129] *SCO Grp., Inc.*, 879 F.3d at 1085 (alteration in original) (quoting *Minter*, 451 F.3d at 1204).

[130] *Sinclair Wyoming Ref. Co.*, 989 F.3d at 777.

[131] (*See* Mot. 8–9, Doc. No. 68.)

[132] (*See* Opp'n 15–16, Doc. No. 73.)

the facts upon which the proposed amendment is based and fails to include them in the original filing.[133]

Although the original complaint in this case was filed in 2020, Ms. Doe argues "delays outside the parties' control due to [COVID]-19 have prolonged the timeline in this matter."[134] Additionally, Ms. Doe contends the School District's "failure to fully respond to [her] discovery requests regarding the District's policies and procedures directly impacted [her] ability to ascertain facts relevant to [her] [a]mendment."[135] Accordingly, Ms. Doe asserts that she only "discovered the basis for her three requested additional causes of action" during Ms. Bennington's July 2022 deposition.[136] The School District contends Ms. Doe's motion to amend is untimely "for the same reasons" stated in its good cause analysis.[137] The School District argues "[m]ost of the information [Ms. Doe] claims was newly discovered was available in the public, already alleged, or available early on in discovery," and Ms. Doe did not assert an adequate reason for waiting so long to seek leave to amend.[138]

---

[133] *Houweling's Nurseries Oxnard, Inc. v. Robertson*, No. 2:14-cv-00611, 2016 U.S. Dist. LEXIS 180510, at *6 (D. Utah Dec. 30, 2016) (unpublished) (alteration in original) (citations and internal quotation marks omitted); *see also Valley Elec. Consol., Inc. v. TFG-Ohio, LP*, No. 2:16-cv-751, 2017 U.S. Dist. LEXIS 80402, at *6 (D. Utah May 24, 2017) (unpublished).

[134] (Mot. 8, Doc. No. 63.)

[135] (*Id.*)

[136] (*Id.*)

[137] (Opp'n 16, Doc. No. 73.)

[138] (*Id.*)

"Lateness does not of itself justify the denial of the amendment."[139]  To justify denial of a motion for leave to amend, the delay must be protracted or undue.[140]  As discussed above, in *Birch*, the Tenth Circuit affirmed the district court's denial of leave to amend based on undue delay where the plaintiff waited four months after discovering new factual allegations and provided no adequate explanation for the delay.[141]  And in *Bird v. West Valley City*,[142] the district court denied leave to amend based on undue delay where the plaintiff sought to amend seven months after the deadline to amend pleadings and one day before the close of fact discovery—and the amendment was simply to clarify existing claims.[143]

Any delay by Ms. Doe does not rise to the level of undue delay.  As established above, Ms. Doe discovered new information giving rise to additional claims in July 2022.  The timeline for purposes of assessing delay began then.  Ms. Doe filed her motion for leave to amend a mere six weeks later, on September 7, 2022—one month before the close of fact discovery.  This reflects timely diligence, not the undue delay seen in *Birch* and *Bird*.

Further, Ms. Doe has provided an adequate explanation for any delay.  Ms. Doe's proposed amendment is much more substantial than in *Bird*.[144]  Rather than seeking to clarify existing claims, Ms. Doe seeks to add new claims based on newly discovered information.  And Ms. Doe's explanation for her failure to amend by the June 1, 2021 deadline is adequate: it

---

[139] *Minter*, 451 F.3d at 1205 (internal quotation marks omitted).

[140] *See id.*

[141] *See Birch*, 812 F.3d at 1248.

[142] No. 2:12-cv-903, 2014 U.S. Dist. LEXIS 97407 (D. Utah July 17, 2014) (unpublished).

[143] *See id.* at *4–5.

[144] *See id.*

stems from an inadvertent failure to amend the pleadings deadline[145] due to clerical

oversight.[146]  As discussed above, this explanation satisfies the good-cause standard under Rule

16.[147]  Where Rule 16's good-cause standard is "arguably more stringent than Rule 15,"[148] and

considering the "similarity between the [R]ule 16(b) good cause standard and the undue delay

analysis under [R]ule 15,"[149] the same analysis applies here.  Accordingly, Ms. Doe has

adequately explained her failure to modify the pleading deadline.

Finally, Ms. Doe did not simply fail to include facts she knew (or which she should have

known) in her original pleading.  For the reasons stated above, Ms. Doe had incomplete and

inaccurate information about the School District's response to prior incidents of teacher

misconduct and the history of Policy 7.6.601 until recently.  Only after the School District

provided clarification did Ms. Doe possess the information giving rise to her additional claims.

Because each factor for evaluating undue delay weighs in favor of Ms. Doe, her motion is timely

under Rule 15.

The School District raises one final argument with respect to timeliness, asserting Ms.

Doe's amendment is an attempt at seriatim pleading.[150]  The School District argues that

because Ms. Doe's "Title IX claim might not provide all the monetary relief expected" in light

---

[145] (*See* Reply 13, Doc. No. 76.)

[146] (*See id.* at 3.)

[147] *See Pathak*, 2018 U.S. Dist. LEXIS 5218, at *5 ("Failure to seek amendment within the deadline may be excused due to oversight, inadvertence, or excusable neglect.").

[148] *Husky Ventures*, 911 F.3d at 1019–20; *see also Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1118 (10th Cir. 2021).

[149] *See Bird*, 2014 U.S. Dist. LEXIS 97407, at *4.

[150] (*See* Opp'n 13–14, Doc. No. 73.)

of the Supreme Court's holding in *Cummings v. Premier Rehab Keller, P.L.L.C.*,[151] she now seeks relief under § 1983.[152]

While a motion to amend may be denied as untimely when "it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay[] raising [an] issue until the eve of trial,"[153] there is no indication that is the case here. Ms. Doe's proposed amendment does not reflect an effort to salvage a "lost case" subject to dismissal, and she has not knowingly waited to raise her claims until the eve of trial. To the contrary, Ms. Doe has consistently and diligently attempted to collect and clarify the information necessary for her additional claims since June 2021. For these reasons, this argument falls short.

> b. *Ms. Doe's Motion to Amend Will Not Cause Undue Prejudice to the School District.*

The "most important factor in deciding a motion to amend pleadings, is whether the amendment would prejudice the nonmoving party."[154] In general, a plaintiff "should not be prevented from pursuing a valid claim . . . provided [] that a late shift in the thrust of the case

---

[151] 142 S. Ct. 1562 (2022). In *Cummings*, the Court held that emotional distress damages are unavailable for private rights of action flowing from federal statutes enacted pursuant to Congress's Spending Clause power. *Id.* at 1567.

[152] (*See* Opp'n 14, Doc. No. 73.)

[153] *Minter,* 451 F.3d at 1206 (alterations in original) (citations and internal quotation marks omitted).

[154] *Id.* at 1207.

will not prejudice the other party in maintaining his defense upon the merits."[155]  Simple

prejudice is insufficient; the amendment must "*unfairly* affect[] the defendant[] in terms of

preparing their defense to the amendment."[156]  Undue prejudice can occur "when the amended

claims arise out of a subject matter different from what was set forth in the complaint and raise

significant new factual issues."[157]  But the fact that a defendant may have more claims to defend

against, does not, alone, create undue prejudice.[158]

The School District argues Ms. Doe's proposed amendment will subject it to undue

prejudice because it raises "significant new factual issues" requiring substantial additional work

and further delaying the case.[159]  According to the School District, the only existing claim in

this case is a Title IX claim based on deliberate indifference, requiring the "examination of the

---

[155] *Am. Ins. Co. v. Pine Terrace Homeowners Ass'n*, No. 20-cv-00654, 2022 U.S. Dist. LEXIS 183471, at *6 (D. Colo. Oct. 6, 2022) (unpublished) (internal quotation marks omitted) (quoting *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991)).

[156] *Minter,* 451 F.3d at 1208 (emphasis added) (internal quotation marks omitted).

[157] *Id.*; *compare Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996) (finding unduly prejudicial a motion "to add an entirely new and different claim . . . little more than two months before trial"), *with Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir. 1994) (finding no evidence of prejudice when the "Petitioner's [amended] claims track the factual situations set forth in his [original] claims") *and Childers v. Indep. Sch. Dist. No. 1*, 676 F.2d 1338, 1343 (10th Cir. 1982) (finding the district court's refusal to allow amendment was "particularly egregious" where "the subject matter of the amendment was already alleged in the complaint").

[158] *See Boulder Falcon, LLC*, 2022 U.S. Dist. LEXIS 139309, at *13 ("[E]ven if the [] defendants are eventually required to defend against new claims, that may rise to the level of 'disappointing' but does not rise to the level of prejudice."); *Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kan., Inc.*, No. 19-cv-4007, 2021 U.S. Dist. LEXIS 114180, at *9 (D. Kan. June 18, 2021) (unpublished) ("That [d]efendant may have more claims to defend does not establish the requisite prejudice."); *Jarboe v. Cherry Creek Mortg. Co.*, No. 19-cv-01529, 2020 U.S. Dist. LEXIS 157277, at *10–11 (D. Colo. Aug. 28, 2020) (unpublished) ("[T]he 'prejudice' which arguably results from having to defend a lawsuit is not deemed to be 'undue' prejudice.").

[159] (Opp'n 18, Doc. No. 73 (quoting *Vivint, Inc. v. NorthStar Alarm Servs., LLC*, No. 2:16-cv-00106, 2018 U.S. Dist. LEXIS 50595, at *19 (D. Utah Feb. 5, 2018) (unpublished)).)

knowledge" of a single school principal.[160]  The School District contends Ms. Doe's "new

claims are much broader, looking at patterns, practices, policies and procedures throughout the

District over a much longer period of time" which will require "significant historical

discovery."[161]

Ms. Doe contends the School District will not suffer undue prejudice because historical

policies and procedures regarding boundaries between teachers and students have been the

topic of discovery since she served her first set of discovery requests.[162]  Ms. Doe argues her

"proposed [a]mendment does not expand the scope of existing discovery" for the School

District, because it "would not have to take any additional depositions beyond those already

scheduled."[163]  Ms. Doe also maintains her amendment "will not delay the current scheduling

order beyond the time necessary for the District to file its [a]nswer."[164]  Ms. Doe asserts she

needs no additional discovery now that the School District has "confirmed through both

deposition testimony and actual operative policies that [it] did not enact specific policy changes

after the three prior teacher[]" incidents.[165]

---

[160] (*Id.* at 16–17.)

[161] (*Id.* at 17.)

[162] (*See* Mot. 9, Doc. No. 68; Reply 18, Doc. No. 76.)

[163] (Mot. 9, Doc. No. 68.)

[164] (*Id.*)

[165] (Reply 18, Doc. No. 76 (emphasis omitted).)  At the hearing, Ms. Doe explicitly stated she does not intend to conduct further discovery with respect to her new claims.

*Minter v. Prime Equipment Company*[166] is instructive here.  In *Minter*, the plaintiff originally asserted a negligence claim against the defendant.[167]  Before trial, the district court granted the defendant's motion to strike the plaintiff's product liability claims.[168]  Despite the presentation of evidence relevant to product liability at trial, the district court denied the plaintiff's motion for leave to amend the pleadings to conform to the evidence.[169]  The Tenth Circuit reversed, permitting the plaintiff to add the product liability claim.[170]  The Tenth Circuit rejected the defendant's argument that this would result in "obvious" prejudice,[171] finding that "[w]hile the two claims are different in form, there is a significant overlap in the factual underpinnings and defenses."[172]  Among other things, the court noted both claims relied on the same underlying proposition.[173]  The court also found it persuasive that the defendant could rely on most of the same defenses.[174]

Similar to *Minter*, although Ms. Doe's new claims are different in form, the factual underpinnings and defenses significantly overlap with those of her original claim.  All Ms. Doe's claims rely on the same underlying proposition: that the School District's conduct and inaction

---

[166] 451 F.3d 1196 (10th Cir. 2006).

[167] *See id.* at 1208.

[168] *See id.* at 1202.

[169] *See id.* at 1203.

[170] *See id.*

[171] *Id.* at 1208.

[172] *Id.*

[173] *See id.*

[174] *See id.*

led to Ms. Doe's victimization.  In fact, the School District argues the factual underpinnings with respect to Ms. Doe's state-created danger claim "were already in the complaint."[175]  Although Ms. Doe adds factual allegations in support of her *Monell* claims, the defenses available to the School District overlap somewhat, especially considering that one type of *Monell* claim requires a showing of deliberate indifference,[176] as does Ms. Doe's Title IX claim.[177]

The School District also argues the need for substantial, additional discovery makes Ms. Doe's amendment unduly prejudicial.[178]  The School District relies on *Vivint, Inc. v. NorthStar Alarm Services, LLC*[179] in support of its position.  In *Vivint*, a magistrate judge recommended the district judge deny leave to amend based on undue prejudice, where the defendant sought to add six counterclaims near the end of fact discovery.[180]  The magistrate judge suggested the need for additional discovery, which was "necessary and could be substantial," would cause undue prejudice.[181]  The magistrate judge arrived at this conclusion, in part, because this was the first

---

[175] (Opp'n 10, Doc. No. 73.)

[176] *See Turner v. City of Tulsa*, 525 F. App'x 771, 773 (10th Cir. 2013) (unpublished) (noting failure to adequately train or supervise is a form of *Monell* liability "so long as that failure results from deliberate indifference to the injuries that may be caused").

[177] (*See* Second Am. Compl. ¶¶ 70–81, Doc. No. 35); *see also Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999).

[178] (*See* Opp'n 17–18, Doc. No. 73.)

[179] *Vivint, Inc. v. NorthStar Alarm Servs.*, LLC., No. 2:16-cv-00106, 2018 U.S. Dist. LEXIS 50595 (D. Utah Feb. 5, 2018) (unpublished), *R&R adopted in part and rejected in part*, *Vivint, Inc. v. NorthStar Alarm Servs., LLC*, No. 2:16-cv-00106, 2018 U.S. Dist. LEXIS 48569 (D. Utah, Mar. 23, 2018) (unpublished).

[180] *See id.* at *16–20.

[181] *Id.* at *19.

time any counterclaim was asserted in the case, meaning the plaintiff had yet to prepare *any* sort of defense.[182]

This case differs from *Vivint* in that the third amended complaint will not require the School District to prepare a defense for the first time in this litigation.  No doubt, the School District has already begun preparing its defenses.  Considering the overlap in the subject matter of the claims, the School District will not suffer undue prejudice from preparing a defense to the new claims.  And because Ms. Doe does not intend to engage in further discovery with respect to her additional claims, any new discovery will be limited.

For the reasons stated above, any potential prejudice to the School District in granting Ms. Doe leave to amend does not rise to the level of undue prejudice under Rule 15.

CONCLUSION

The good cause standard under Rule 16 is satisfied because Ms. Doe first learned new information giving rise to additional claims in July 2022 and she has demonstrated diligence throughout discovery.  Additionally, Ms. Doe's motion for leave to amend is timely under Rule 15 because only six weeks passed between the time she discovered new information and the time she filed her motion to amend.  Moreover, Ms. Doe provided an adequate explanation for any delay.  Lastly where Ms. Doe's claims rely on the same underlying proposition, and any additional discovery will be limited, the School District will not be unduly prejudiced.  Accordingly, Ms. Doe has satisfied the requirements of both Rule 16 and Rule 15, and her motion for leave to file a third amended complaint[183] is GRANTED.  Ms. Doe shall file a third

---

[182] *See id.* at *16–20.  The district judge adopted the magistrate judge's recommendation and analysis on the issues of good cause to amend and undue prejudice.  *See Vivint, Inc.*, 2018 U.S. Dist. LEXIS 48569 at *10–11.

[183] (Mot., Doc. No. 68.)

amended complaint in the form found at Doc. No. 68-1 within seven days.  Once filed on the

docket, the third amended complaint will be the operative complaint in this action.

       DATED this 4th day of January, 2023.

                                  BY THE COURT:

                                  *Daphne A. Oberg*
                                  Daphne A. Oberg
                                  United States Magistrate Judge